CONVERTING/BIOPHILE LABORATORIES, INC.,
**Plaintiff-Appellant,**

v.

LUDLOW COMPOSITES CORPORATION
**and D. C. Henning, Inc.,**
**Defendants-Respondents.**

Court of Appeals

*No. 2005AP1628. Submitted on briefs July 10, 2006.
—Decided August 23, 2006.*

2006 WI App 187

(Also reported in 722 N.W.2d 633.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alexander Ullenberg, Esq.* of *Ullenberg Law Offices of Fond Du Lac.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *Paul D. Cranley* of *Cook & Franke, S.C.* of Madison, and *Matthew D. Harper*, of *Eastman & Smith, LTD.* of Toledo, OH.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Converting/Biophile Laboratories, Inc. (CBL) appeals from an order dismissing its complaint against Ludlow Composites Corporation and D.C. Henning, Inc. The circuit court dismissed CBL's action as improvidently commenced in Wisconsin because it read a forum-selection provision in Ludlow's invoices to CBL as mandating that all claims resulting from the parties' commercial transaction be brought in Ohio. We disagree. We read the clauses as permissive, not mandatory. We reverse and remand for further proceedings on CBL's complaint.

## BACKGROUND

¶ 2. Typically on review of a motion to dismiss, we look only to the complaint, summarizing its allegations and taking them as true for purposes of the appeal. *Beilfuss v. Huffy Corp.*, 2004 WI App 118, ¶ 2 n.1, 274 Wis. 2d 500, 685 N.W.2d 373. Here, however, the motion to dismiss was granted based on the forum-selection clause in the invoices, a matter not alleged in CBL's complaint. When, on a motion to dismiss, parties present matters outside the pleadings, the motion should be processed as one for summary judgment. *Gielow v. Napiorkowski*, 2003 WI App 249, ¶ 12, 268 Wis. 2d 673, 673 N.W.2d 351; *see* Wis. Stat. § 802.06(3)

(2003–04).[1] Accordingly, our recitation of facts also includes averments from affidavits the parties submitted in support of or in opposition to Ludlow's motion to dismiss.

¶ 3. CBL is a Wisconsin corporation that manufactures the Ear Muffin®, a foam adapter used with a device that tests a newborn's hearing. Ludlow, a Delaware corporation located in Ohio, manufactures foam for industrial applications. D.C. Henning is a Wisconsin distributor of Ludlow's foam products. In 2003, Ludlow provided CBL with a free sample of its foam product, which Ludlow represented would be suitable for CBL to use in the production of the Ear Muffin®.

¶ 4. After testing the foam product, CBL placed an order with Ludlow on December 5, 2003. Ludlow responded on December 8 with an order confirmation and shipped the order to CBL on December 30.

¶ 5. On January 5, 2004, Ludlow sent an invoice to CBL for the shipment of foam product. The bottom of the invoice accompanying the shipment stated in capitalized bold type: **"IMPORTANT: THIS SALE IS MADE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE HEREOF."** The reverse side of the invoice was titled in bold, capitalized, underlined letters: **"ADDITIONAL TERMS AND CONDITIONS OF SALE**," and consisted of ten paragraphs. Paragraph 8 was titled in capitalized, underlined letters: **"JURISDICTION, VENUE AND TIME FOR BRINGING CLAIMS."** The text of the paragraph provided:

> All claims arising from the sale of the Products hereunder, including any claim for breach of these Terms

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

and Conditions shall be brought within one (1) year from the date that the cause of action arises, or within two (2) years from the date of the sale of the Products, whichever is shorter. *Buyer hereby consents to and submits to the jurisdiction of the courts of the State of Ohio and further consents to venue of any such proceeding in the Common Pleas Court of Sandusky, Ohio, or the United States District Court for the Northern District of Ohio, Western Division, based upon the location of Seller's principal place of business.* (Emphasis added.)

CBL did not object to the Terms and Conditions on the invoice, and paid it on February 5, 2004.

¶ 6. Before paying that invoice, however, CBL placed a second, larger order with Ludlow on January 6, 2004, for additional rolls of foam product. Ludlow acknowledged this second purchase order with three separate confirmation orders. Ludlow shipped the product to CBL in two shipments and invoiced CBL via three separate invoices dated February 18, 19 and 28, 2004. As with the invoice covering the parties' first transaction, each of these invoices recited the bolded and capitalized language we have noted above and included the same forum-selection provision stating that CBL consented to Ohio jurisdiction and venue. CBL again did not object to the Terms and Conditions.

¶ 7. By early March 2004, CBL learned that the foam was failing in its commercial application with the Ear Muffin®, and, as a result, CBL refused to pay the February invoices, amounting to nearly $39,000. CBL conducted an international recall of the defective foam, incurring over $114,000 in expenses for manufacturing and shipping replacement product and in lost profits.

279

¶ 8. In June 2004, CBL first became aware of the Terms and Conditions recited in the invoices when Ludlow and D.C. Henning representatives mentioned them to CBL. In response, CBL's president told Ludlow's and D.C. Henning's representatives that he was unaware of such Terms and Conditions and that CBL never had agreed to them. He explained that, in keeping with "industry standard practice of which Ludlow . . . should have been aware," purchase orders and order confirmations are directly reviewed by the senior employee who negotiated the purchase, while invoices are handled by the accounts payable department and passed on for review by the senior employee only when quantity or price differs from the purchase order.

¶ 9. In October 2004, after Ludlow refused to reimburse CBL for the expenses incurred in the recall, CBL commenced this action in the circuit court for Fond du Lac County. CBL's complaint alleged claims sounding in rescission, restitution, breach of contract, breach of warranty, misrepresentation and product liability. Without filing an answer, Ludlow moved to dismiss pursuant to the forum-selection provision on the reverse side of the invoices. Ludlow argued that, pursuant to WIS. STAT. § 402.207, the Terms and Conditions on the invoices were enforceable additional terms of the sales contract. CBL disagreed, and argued in the alternative for rescission on grounds of mistake or for nonenforcement of the forum-selection clause on grounds of unconscionableness or that it was permissive, not mandatory. The circuit court agreed with Ludlow, granting the motion to dismiss the complaint without prejudice so that CBL might proceed in an Ohio court.

¶ 10. CBL appeals. We certified this case to the supreme court. However, our certification was rejected by a divided court.

280

## DISCUSSION

¶ 11. CBL contends that its action was wrongly dismissed pursuant to the forum-selection clause found in the Terms and Conditions recited on the reverse of the invoices. First, CBL contends on a threshold basis that Ludlow's order confirmations and shipment of the goods, followed by CBL's acceptance of the goods, precludes the application of Wis. Stat. § 402.207, titled "Additional terms in acceptance or confirmation." CBL alternatively contends that even if the forum-selection provision is held to be part of the parties' agreement, it still is unenforceable because: (1) the clause materially alters the agreement under Wis. Stat. § 402.207(2)(b); (2) CBL's purchase order expressly limited acceptance to its own terms; (3) the clause is permissive, not mandatory; and (4) the clause does not govern CBL's fraud and Wis. Stat. § 100.18 claims.

¶ 12. The circuit court ruled that the invoices represented additional terms to the parties' contract and that the additional terms did not materially alter the contract. The court also concluded that CBL's failure to discover and read the forum-selection provision on the backside of the invoices was no defense. The bottom line for the court was the clause's "unequivocally clear" language and CBL's failure to object within a reasonable time.

¶ 13. As we have stated, we are treating the issue under the law of summary judgment. That altered stance does not change our standard of review, however. Motions to dismiss and for summary judgment both are subject to our de novo review. *State ex rel. Lawton v. Town of Barton*, 2005 WI App 16, ¶ 9, 278 Wis. 2d 388, 692 N.W.2d 304 (motion to dismiss); *Gielow*, 268 Wis. 2d

281

673, ¶ 12 (motion to dismiss processed as summary judgment).

*WISCONSIN STAT. § 402.207 and UCC § 2–207*

¶ 14. WISCONSIN STAT. § 402.207 provides in relevant part:

> **Additional terms in acceptance or confirmation.** **(1)** A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> **(2)** The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) The offer expressly limits acceptance to the terms of the offer;
>
> (b) They materially alter it; or
>
> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

The wording of § 402.207 is identical to UNIFORM COMMERCIAL CODE § 2–207 (2003).

¶ 15. CBL submits that the parties' agreement already had been finalized through the purchase orders and order confirmations prior to Ludlow's submission of the invoices. Accordingly, CBL contends that the invoices cannot be part of any contract between the parties. CBL asserts that WIS. STAT. § 402.207 therefore does not apply because the statute addresses only issues of contract formation, not situations where a contract already has been formed.

282

¶ 16. Although we ultimately rule for CBL in this appeal, we reject this portion of its arguments. The instant case is precisely the type of scenario for which WIS. STAT. § 402.207 was designed. Practical, real-life considerations in the dealings of commercial parties lie at the heart of the statute. Section 402.207 altered the common law mirror-image rule under which the terms of an acceptance had to exactly mirror those of the offer. *See Air Prods. & Chems., Inc. v. Fairbanks Morse, Inc.*, 58 Wis. 2d 193, 211, 206 N.W.2d 414 (1973). A widely recognized Uniform Commercial Code treatise observes:

> The general purpose of [UCC] § 2–207 is to establish guidelines for the finding of a contract in the routine exchange of divergent forms between buyers and sellers in a commercial setting . . . . [UCC § 2–207] . . . requires courts to put aside the formal and academic stereotypes of traditional doctrine of offer and acceptance and to analyze instead what really happens.
>
> . . . .
>
> UCC § 2–207 is designed to eliminate the common law rule that required an acceptance to be identical in all terms with an offer . . . . Rather, . . . each party typically has a printed form drafted by his [or her] attorney and containing as many terms as could be envisioned to favor that party in his [or her] sales transactions. Whereas under common law the disparity between the fine-print terms in the parties' forms would have prevented the consummation of a contract when these forms are exchanged, [§ 2–207] recognizes that in many, but not all, cases the parties do not impart such significance to the terms on the printed forms.
>
> . . . .
>
> UCC § 2–207 furthers the Code's goal of promoting the formation of contracts by adding a presumption that the printed form will not always be read.

2 LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE, § 2–207:6 (3d ed. 2004) (quotations and footnotes omitted).

¶ 17. Thus, WIS. STAT. § 402.207 recognizes that, in actual practice, the parties' forms may not be identical, a party might later add divergent terms, and the parties may not always read each other's forms. Nonetheless, subject to certain conditions, the statute allows for enforcement of the parties' agreement, including the additional terms. Rather than dooming the contract, the new terms are construed as proposals for addition to the contract, and become part of it unless: (1) the offer expressly limits acceptance to the original terms, (2) the additional terms represent a material alteration of the parties' agreement, or (3) the recipient of the added provision seasonably objects. *See* § 402.207(2).

¶ 18. Moreover, the court of appeals already has said that an invoice falls within the ambit of WIS. STAT. § 402.207. *Mid-State Contracting, Inc. v. Superior Floor Co.*, 2002 WI App 257, ¶ 10, 258 Wis. 2d 139, 655 N.W.2d 142. An invoice is not entirely separate from the existing agreement but is "a written confirmation of a request for work by one party, the performance of work by the second, and the cost of the work agreed upon." *Id.* If CBL were correct that purchase orders and order confirmations were immovable bookends to a contract, ensuing transactions between the parties would be composed of a cumbersome, inefficient series of mini-contracts. This is what UCC § 2–207 and § 402.207 seek to avoid. We hold that, regardless of CBL's claimed lack of awareness of them, the Terms and Conditions on the invoices could become part of the contract, subject to the exceptions of § 402.207(2).

¶ 19. We therefore hold that the circuit court properly ruled that the invoices could serve as a vehicle for additional terms to the parties' contract. That brings us to the next question: whether the forum selection clause in the invoices is enforceable.

### Forum-Selection Clauses Generally

¶ 20. Before we address the particular language of the forum-selection clauses in this case, we note some basic principles pertaining to such clauses.

¶ 21. All things being equal, a plaintiff's decision about where to bring the action is entitled to great weight. *See Teague v. Bad River Band of Chippewa Indians*, 2003 WI 118, ¶ 74, 265 Wis. 2d 64, 665 N.W.2d 899 (Abrahamson, C.J., concurring). This "favoring" of the plaintiff's choice of forum may be superseded in several ways, however, such as through an inconvenient forum motion under WIS. STAT. § 801.63, a discretionary change of venue under WIS. STAT. § 801.52, or a valid forum-selection clause. *See, generally, M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–15 (1972).[2]

---

[2] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), dealt more with the broad subject of the enforceability of forum-selection clauses than with the enforceability of a particular one. Before that time, forum-selection clauses historically were disfavored by American courts. *Id.* at 9. In *M/S Bremen*, the Supreme Court recognized that, given modern commercial realities and expanding international trade, freely negotiated forum clauses should be given full effect absent a strong showing of unreasonableness, "fraud, undue influence, or overweening bargaining power," or contravention of public policy. *Id.* at 10, 12, 15. We also make note that, unlike in the case before us, in *M/S Bremen* there was "strong evidence" that the forum clause was a "vital part" of the parties' agreement. *Id.* at 14.

285

¶ 22. A contract's forum-selection clause is presumptively valid in Wisconsin. *Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶ 1, 275 Wis. 2d 444, 685 N.W.2d 884. Our common law obligates parties to a contract to perform their duties under the contract. *See Ranes v. American Family Mut. Ins. Co.*, 219 Wis. 2d 49, 57, 580 N.W.2d 197 (1998). Therefore, when parties have previously agreed that litigation should be conducted in a particular forum, there is a strong presumption favoring venue in that forum, unless enforcement is shown to be unreasonable under the circumstances. *Beilfuss*, 274 Wis. 2d 500, ¶ 17 (citing *M/S Bremen*, 407 U.S. at 10). However, where a forum-selection clause is deemed to be unconscionable or a violation of public policy, we have declared it unreasonable and have refused to enforce it. *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 88–90, 483 N.W.2d 585 (Ct. App. 1992) (unconscionable); *Beilfuss*, 274 Wis. 2d 500, ¶ 18 (violation of public policy).

¶ 23. Although a forum-selection clause is entitled to a favorable presumption, the law also holds that where jurisdiction normally would exist, "it cannot be ousted or waived absent a clear indication of such a purpose." *John Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers and Distribs., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (citation omitted); *see also Beilfuss*, 274 Wis. 2d 500, ¶ 17 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 (1971), which provides that the parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but will be enforced if not unfair or unreasonable). We additionally note a basic tenet of contract law: when contract language is reasonably and fairly susceptible of more than one construction, it is

ambiguous, and ambiguities in a contract provision are to be construed against the drafter. *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶ 15, 234 Wis. 2d 670, 610 N.W.2d 832.

¶ 24. With these principles in mind, we turn to the particular language of the forum-selection clauses in this case.

*Permissive vs. Mandatory*

¶ 25. The forum-selection clause at issue here provides, in relevant part, that CBL "consents to and submits to the jurisdiction of the courts of the State of Ohio . . . or the United States District Court for the Northern District of Ohio . . . ." CBL argues that this language is merely permissive, not mandatory, as to a plaintiff's selection of a forum. No Wisconsin case has addressed whether this kind of forum-selection language is permissive or mandatory. As an issue of first impression, we therefore may consider persuasive authority from other jurisdictions. *See Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 67, 237 Wis. 2d 19, 614 N.W.2d 443.

¶ 26. Courts from other jurisdictions support CBL's argument. "Clauses in which a party agrees to 'submit' to jurisdiction are not necessarily mandatory." *Utah Pizza Serv., Inc. v. Heigel*, 784 F. Supp. 835, 838 (D. Utah 1992). "Such language means that the party agrees to be subject to that forum's jurisdiction *if sued there*. It does not prevent the party from bringing suit in another forum." *Id.* (emphasis added). The language of a mandatory clause shows more than that jurisdiction is *appropriate* in a designated forum; it unequivo-

cally mandates *exclusive* jurisdiction. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir. 1987). Absent specific language of exclusion, an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere. *John Boutari & Son*, 22 F.3d at 53.

¶ 27. In *John Boutari & Son*, the forum-selection clause in an agreement between a Greek exporter and a New York importer provided: "Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." *Id.* at 52. The district court dismissed the action for a lack of jurisdiction; the Second Circuit Court of Appeals reversed. *Id.* The court stated that the choice of forum must be mandatory rather than permissive, and that although "shall" is a mandatory term, it mandated nothing more than that the Greek courts had jurisdiction; it did not deprive the district court of jurisdiction. *Id.* at 53. "[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *Id.*

¶ 28. *Hunt Wesson Foods* provides another example. The contract there contained this forum-selection clause:

> Buyer and Seller expressly agree that the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract.

*Hunt Wesson Foods*, 817 F.2d at 76. Despite providing that Orange county courts "shall have jurisdiction . . . in any action . . . relating to . . . this contract," the court determined that the clause was permissive:

288

> The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. Although the word "shall" is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction. Thus, Supreme [Oil] cannot object to litigation in the Orange County Superior Court on the ground that the court lacks personal jurisdiction. Such consent to jurisdiction, however, does not mean that the same subject matter cannot be litigated in any other court.

*Id.* at 77. In other words, the clause granted Orange county courts jurisdiction, but not exclusive jurisdiction.

¶ 29. *Utah Pizza,* relied upon by CBL, is to the same effect. The forum-selection clause there provided:

> The parties agree that in the event of litigation between them, Franchise Owner stipulates that the courts of the State of Michigan shall have personal jurisdiction over its person, that it shall submit to such personal jurisdiction, and that venue is proper in Michigan.

*Utah Pizza,* 784 F. Supp. at 837. The court found that the clause was permissive. *Id.* at 839. It reasoned that while the plain language revealed an intent to give the drafter the right to bring suit in Michigan, nothing in the provision indicated an intent to prohibit litigation elsewhere. *Id.* at 837–38. Citing *Hunt Wesson Foods,* 817 F.2d at 77–78, the court observed that "[m]andatory forum-selection clauses contain language such as 'exclusive' or 'only' [and their] language mandates that the designated courts are the only ones which have jurisdiction." *Utah Pizza,* 784 F. Supp. at 838.

¶ 30. Numerous other courts have interpreted similarly worded forum-selection clauses in similar fashion. For example, in *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft,* 314 F.3d 494 (10th Cir. 2002), BMW, the German defendant, and the plaintiff, a

New Mexico corporation, signed a confidential disclosure agreement involving certain new technology the plaintiff developed and BMW expressed interest in. *Id.* at 495–96. Without notice or prior discussion, BMW sent the plaintiff a new agreement which, unlike the first, contained a forum-selection clause providing:

> Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich. All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany.

*Id.* at 496. The plaintiff signed the new agreement. *Id.* A dispute arose soon after and the plaintiff filed suit in New Mexico state court. *Id.* at 497. BMW removed the case to federal court and moved to dismiss for lack of jurisdiction and improper venue. *Id.* The district court granted the motion, holding that the agreement was "unambiguous and enforceable," and demonstrated the parties' intent to locate the action solely in the Munich courts. *Id.* The Tenth Circuit Court of Appeals reversed, holding that the forum-selection clause was permissive, because permissive clauses authorize jurisdiction in a designated forum but do not prohibit litigation elsewhere. *Id.* at 498.

¶ 31. In *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir. 1985), the district court terminated the Florida plaintiff's breach of contract suit against the Brazilian defendant on grounds that the forum-selection clause disposed of the action. *Id.* at 1231. The plaintiff and defendant exchanged a series of telexes, none containing jurisdictional terms, concerning the purchase and shipment of orange juice concentrate. *Id.* After confirming Citro Florida's purchase order, Citrovale sent a confirming contract

providing: "This constitutes an executory contract between the exporter and the above-indicated buyer. Place of jurisdiction is Sao Paulo/Brazil." *Id.* The plaintiff's president signed the contract without further negotiation or discussion. *Id.* The district court enforced the clause pursuant to the Supreme Court's holding in *M/S Bremen*. *Citro Florida*, 760 F.2d at 1232. The Eleventh Circuit Court of Appeals reversed, holding that because the forum-selection clause was ambiguous as to exclusivity, it must be construed against Citrovale, the drafter. *Id.*

¶ 32. We conclude that these cases are well-reasoned and we adopt the holdings as the law of Wisconsin on this question. As applied to this case, had CBL filed suit in Ohio, jurisdiction and venue clearly would be proper under the forum-selection clause. The same would be true if Ludlow were the plaintiff and filed its action in Ohio. However, here CBL was the plaintiff and chose Fond du Lac County, Wisconsin, as the venue. The forum-selection clause says nothing about jurisdiction and venue being exclusive to Ohio. The result is that the clause is permissive, not mandatory.

*Ambiguity*

¶ 33. Even if not clearly permissive, the forum-selection clause at least is ambiguous. We judge a contract's terms objectively by looking to the express words used in the contract. *Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 20, 266 Wis. 2d 124, 667 N.W.2d 751. Whether contract terms are plain or ambiguous is a question of law, which we review de novo. *Id.*, ¶ 8.

¶ 34. Once again, the forum-selection clause at issue here states:

> All claims arising from the sale of the Products hereunder, including any claim for breach of these Terms and Conditions shall be brought within one (1) year from the date that the cause of action arises, or within two (2) years from the date of the sale of the Products, whichever is shorter. Buyer hereby consents to and submits to the jurisdiction of the courts of the State of Ohio and further consents to venue of any such proceeding in the Common Pleas Court of Sandusky, Ohio, or the United States District Court for the Northern District of Ohio, Western Division, based upon the location of Seller's principal place of business.

The clause comprises two sentences, the first addressing the time of bringing claims, the second addressing jurisdiction and venue. Ludlow argues that the clause, read in its entirety, unambiguously limits litigation to Ohio because the phrase "all claims" in the first sentence also applies to the second.

¶ 35. CBL, by contrast, suggests that "all claims" is confined to the first sentence's clear mandate that "all claims" must be brought within a particular time frame. It argues that the phrase "any such proceeding" in the second sentence does not refer *back* to "all claims" but *forward* to mean that, while any court in the State of Ohio has jurisdiction, "any such proceeding" brought in an Ohio court must be brought in one of two specific Ohio courts. Regardless as to which interpretation is ultimately correct, both interpretations are reasonable. Contractual language that is reasonably and fairly susceptible of more than one construction is ambiguous. *Dieter*, 234 Wis. 2d 670, ¶ 15. We must construe the provision against Ludlow as the drafter. *See id.*

¶ 36. Ludlow persists, however, arguing that "a remarkably similar forum-selection clause" in *Beilfuss* has already been held to be unambiguous and enforceable. Ludlow represents that the *Beilfuss* clause states "may be heard and determined" in Ohio courts. In fact, the *Beilfuss* clause provided in relevant part:

> EMPLOYEE hereto irrevocably submit(s) to the jurisdiction of the federal or state courts located in the State of Ohio over any dispute arising out of or relating to this agreement. EMPLOYEE irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such Courts. EMPLOYEE hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection which he or she may now or hereafter have to the laying of venue of such dispute brought in such court or any defense of inconvenient forum in connection therewith.

*Beilfuss*, 274 Wis. 2d 500, ¶ 7. The plaintiff argued that the clause was ambiguous because "irrevocably submits" clashed with "may." *Id.*, ¶ 4. The court of appeals disagreed, concluding that the terms "irrevocably submit(s)," "irrevocably agrees" and "irrevocably waives" overcame any suggestion of ambiguity through the use of "may." *Id.*, ¶ 8.

¶ 37. We disagree that the forum-selection clause in this case is "remarkably similar" to that in *Beilfuss*. Nothing in the instant clause approaches the rigidity or absoluteness of the "irrevocable" language in the *Beilfuss* clause. In short, the language employed by Ludlow in the instant clause does not capture the essence of the *Beilfuss* clause.[3]

---

[3] CBL also argues that its injury flowed from Ludlow's and D.C. Henning's presale misrepresentations regarding the suitability of the foam product for the required application. It argues that the circuit court erred in dismissing its Wis.

## CONCLUSION

¶ 38. We agree with the circuit court's holding that an invoice can introduce additional terms to the parties' standing agreement, subject to the exceptions in WIS. STAT. § 402.207(2). We conclude, however, that due to its permissive and ambiguous phrasing, the forum-selection clause does not operate to bar jurisdiction or venue in Wisconsin. We reverse the circuit court's order dismissing CBL's complaint and we remand for further proceedings on the complaint.

*By the Court.*—Order reversed and cause remanded.

Stat. § 100.18 claim because a party may not fraudulently induce a contract and then hide behind the contract's language for relief. Because we are reversing and remanding for further proceedings on CBL's complaint, we need not further address this issue.