MERITER HEALTH SERVICES, INC.,
Plaintiff-Appellant,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,
Defendant-Respondent.

Court of Appeals

*No. 2007AP1983. Submitted on briefs January 14, 2008.
—Decided July 17, 2008.*

2008 WI App 132

(Also reported in 758 N.W.2d 112.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Arthur E. Kurtz* and *Mitchell R. Olson* of *Axley Brynelson, LLP*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas N. Klug* and *Patryk Silver* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Higginbotham, P.J., Vergeront and Bridge, JJ.

¶ 1. BRIDGE, J. Meriter Health Services, Inc. commenced this action against Travelers Casualty and Surety Company of America for breach of contract after

Travelers denied a claim made by Meriter under a "commercial crime" insurance policy issued by Travelers. The circuit court granted Travelers' motion for summary judgment, concluding that Travelers owed no insurance coverage to Meriter because of a misrepresentation made by Meriter on its insurance application. We determine that the property in question was not covered property under the terms of the policy and therefore affirm, although for different reasons.

## BACKGROUND

¶ 2. Meriter is a health care services corporation and a holding company of various entities, including Meriter Hospital, Inc. In August 2004, Meriter discovered that one of its employees, Nancy Malek, had embezzled in excess of $470,000 from a checking account between approximately 1991 and 2004.[1] The checking account was maintained at M&I Bank in Madison, and was opened in the name of the Medical Staff of Meriter Hospital (Medical Staff).

¶ 3. The Medical Staff consists solely of physicians who are either accredited to practice their profession at Meriter Hospital as independent contractors or have the professional privilege to practice at Meriter Hospital. The physicians are not Meriter employees and are not paid by Meriter. The purpose of the Medical Staff is to augment the quality of professional services by the physicians who provide services at Meriter.

¶ 4. The checking account from which Malek embezzled was funded entirely by annual dues paid by the physicians who were members of the Medical Staff. The

---

[1] Malek was convicted of mail fraud in United States District Court after pleading guilty to the charge of embezzling from Meriter.

dues were used to pay for Medical Staff stipends and honoraria; for donations for charitable purposes; for retreats and conferences; for continuing medical education; and for payment of a salary to Medical Staff personnel, including Malek, who was the Medical Staff Coordinator. Disbursements from the account were to be directed by the Medical Staff executive committee.

¶ 5. At the time of Malek's embezzlement, Meriter held a "commercial crime" insurance policy issued by Travelers which, among other things, included coverage for loss of property, including money, attributable to employee dishonesty. The "Ownership of Property; Interests Covered" provision in the policy limited coverage as follows:

> The property covered under this insurance is limited to property:
>
> **a.** That you own or hold; or
>
> **b.** For which you are legally liable.

¶ 6. Meriter submitted a claim to Travelers under the policy. Travelers denied the claim in part on the basis that the embezzled funds were the property of the Medical Staff, which Travelers asserted was not an entity listed as a named insured or joint insured on the policy.

¶ 7. Meriter filed a complaint alleging breach of contract by Travelers for denying coverage. It contended that the embezzlement was a covered loss under the policy and that it had performed all of its required obligations under the contract. Travelers moved for summary judgment, which the circuit court granted, and Meriter moved for partial summary judgment, which the court denied.

¶ 8.  The circuit court ruled that Meriter made a material misrepresentation on its application for insurance coverage when it stated that the Medical Staff bank account was audited; that Travelers relied on this misrepresentation; and that the misrepresentation contributed to its loss. The court therefore ruled that, pursuant to Wis. Stat. § 631.11(1)(b) (2005–06),[2] Travelers need not indemnify Meriter. Meriter appeals.

¶ 9.  We reference additional facts as needed in the discussion below. The material facts are not disputed.

## LEGAL PRINCIPLES AND STANDARD OF REVIEW

¶ 10.  We review a grant of summary judgment by applying the same methodology as the circuit court and our review is de novo. *Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 12, 236 Wis. 2d 137, 613 N.W.2d 110. A party is entitled to summary judgment when

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted. WISCONSIN STAT. § 631.11(1)(b) provides:

*Misrepresentation or breach of affirmative warranty.* No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:

1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.

2. The fact misrepresented or falsely warranted contributes to the loss.

there are no disputed issues of material fact and that party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 11. Interpretation of the contractual language contained within an insurance policy presents a question of law that we review independently. *See Zurich Am. Ins. Co. v. Wisconsin Physicians Servs. Ins. Corp.*, 2007 WI App 259, ¶ 11, 306 Wis. 2d 617, 743 N.W.2d 710. We give to the language of insurance contracts its plain meaning as it would be understood by a reasonable insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium. *1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶ 51, 293 Wis. 2d 410, 716 N.W.2d 822.

¶ 12. A contract provision is ambiguous when it is reasonably and fairly susceptible to more than one construction. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979). Whether the terms of a written contract are ambiguous is a question of law which we review de novo. *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶ 33, 296 Wis. 2d 273, 722 N.W.2d 633.

## DISCUSSION

### *Policy Coverage*

¶ 13. Before we can reach the question of whether coverage under the insurance policy is precluded on the basis of misrepresentation, we must first determine

666

whether the Medical Staff bank account is covered under the terms of the policy. As noted above, the policy limits coverage to that property which Meriter "own[s]," or "hold[s]," or for which Meriter is "legally liable." The policy does not define these terms.

### 1. *Owned*

¶ 14.   We first examine whether Meriter owned the funds embezzled by Malek. The parties do not contend that the word "owned" is ambiguous, and we agree that it is not. Accordingly, we will apply the plain and ordinary meaning of the term. *See Kraemer Bros., Inc. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 561–62, 278 N.W.2d 857 (1979).

¶ 15.   WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1612 (1993) defines "own" as "belonging to oneself." In addition, the supreme court has ruled that possession and control of personal property, such as money, which by its very nature does not bear any indicia of ownership, gives rise to a presumption of ownership in the possessor. *In re James' Estate,* 267 Wis. 105, 119, 65 N.W.2d 9 (1954). It is clear from these definitions that possession and control are the benchmarks for determining ownership.

¶ 16.   Meriter contends that it owned the Medical Staff account because the Medical Staff is a component part of Meriter rather than a separate legal entity. Its position is premised on the following reasoning. Wisconsin law, through WIS. ADMIN. CODE § HFS 124.12, requires a hospital to have a medical staff.[3] Meriter's bylaws in

---

[3] WISCONSIN ADMIN. CODE § HFS 124.12(2) provides:   "The hospital shall have a medical staff organized under by-laws

turn require that its board of directors organize and establish a medical staff and that its board of directors approve the bylaws and rules adopted by the medical staff. From this, Meriter argues that it owned the funds in the bank account because the Medical Staff is "part and parcel" of Meriter.

¶ 17. Meriter points to the fact that the Medical Staff is not a partnership or corporation and has never filed or paid income taxes. Meriter further contends that it owned the Medical Staff account because: a portion of the funds in the account was used to pay the salary of Malek, who was employed by Meriter Hospital; annual dues from Medical Staff members were received and handled by a Meriter employee; in paying their Medical Staff dues, many physicians made their checks payable to Meriter; the senior vice-president of medical affairs, the chief financial officer, and the risk manager of Meriter testified that the Medical Staff account was owned by Meriter; and the Medical Staff did not have any employees, did not have its own equipment, and its office, which was located in Meriter Hospital, utilized equipment owned by Meriter and had never been subject to a lease agreement.

¶ 18. Travelers responds that the fact that a hospital is required by law to maintain a medical staff does not necessarily make the funds of staff physicians the property of the hospital. We agree. Moreover, for the following reasons, we conclude that Meriter did not exercise possession or control over the account. In particular, Meriter did not have signatory authority or the ability to withdraw from the account. It did not deposit money into the account and did not decide how the

approved by the governing body. The medical staff shall be responsible to the governing body of the hospital for the quality of all medical care provided patients in the hospital . . . ."

money in the account was to be spent. In addition, Meriter did not report or pay taxes on the interest earned by the account and did not exercise any internal controls of the account or subject it to an internal or external audit. Based on these undisputed facts, we conclude that Meriter did not own the account. Accordingly, we conclude that the commercial crime policy does not cover the loss to the Medical Staff bank account under the ownership provision.

## 2. *Held*

¶ 19.    Meriter next argues in the alternative that in the event that we conclude that it did not own the funds, we should conclude that it held the funds for the benefit of the Medical Staff. Meriter asserts that the word "hold" is not ambiguous, and that we should apply the plain language definition of the word. *See Oaks v. American Family Mut. Ins. Co.*, 195 Wis. 2d 42, 47–48, 535 N.W.2d 120 (Ct. App. 1995). Travelers does not dispute this, and we agree that the term is not ambiguous.

■

¶ 20.    WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1078 (1993) defines "hold" as "to retain in one's keeping: maintain possession of." BLACK'S LAW DICTIONARY 749 (8th Ed. 2004) similarly defines "hold" as "[t]o possess by lawful title." Thus, to be a holder of the funds, Meriter must have been in lawful possession of them.

¶ 21.    Meriter's argument as to why it held the account for the benefit of the Medical Staff largely tracks its argument as to why it owned the account. Meriter argues:   its employee was responsible for the account; it controlled the ultimate steps to admit all

members to the Medical Staff; and individual Medical Staff physicians often made their annual dues checks payable to Meriter, which were to be deposited into the Medical Staff account. Meriter further contends that because none of the individual physician members had a right to the funds deposited in the account, possession of the funds by definition transferred to another party, and that Meriter Hospital was listed as the account title on the account's "Non-Personal Signature Card."

¶ 22. In response, Travelers points to evidence that the funds were being held by M&I Bank in a checking account in the name of the *Medical Staff* of Meriter Hospital, not in the name of *Meriter Hospital* alone. In addition, Travelers points out that in its insurance application, Meriter did not identify the account as property held by Meriter even though the application references other property held by Meriter Hospital.

¶ 23. The funds embezzled by Malek were maintained by M&I Bank in a checking account in the name of the Medical Staff. Although the account was overseen by an employee of Meriter, the Medical Staff reimbursed Meriter for its expenses in providing this oversight. Based on the undisputed facts, we conclude that Meriter did not maintain possession of the funds in the Medical Staff account. Accordingly, we conclude that the commercial crime policy does not cover the loss to the Medical Staff bank account under the "hold" provision.

### 3. *Legal Liability*

¶ 24. The final category of property covered under the policy is that property for which Meriter is "legally liable." Meriter argues in the alternative that, should

we determine that it neither owns nor holds the funds in the account, it is nevertheless legally liable for Malek's embezzlement of those funds. As it has done previously, Meriter contends, and Travelers does not dispute, that the term is not ambiguous, and that it should be construed using the plain language definition of the term. *Oaks,* 195 Wis. 2d at 47–48. We agree. "Liable" is defined by WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1302 (1993) as "bound or obligated according to law or equity."

¶ 25. Relying on *Bauer v. Consolidated Underwriters,* 518 S.W.2d 879, 880 (Tx. App. 1975), in which the Texas Court of Appeals stated that there is legal liability if an obligation is established which would form the basis of a judgment, Meriter argues that a party is legally liable when the facts demonstrate a known cause of action against it. Meriter submits that it is legally liable for the funds embezzled by Malek based on the doctrine of negligent supervision of an employee. Under Meriter's view, it is "legally liable" if a judgment may be entered against it for damages to a third party such as the Medical Staff. We conclude otherwise.

¶ 26. We begin by observing that the Travelers policy covers Meriter's direct loss of property rather than damages incurred by Meriter to a third party. This is because the policy is an employee dishonesty policy, otherwise referred to as a fidelity policy, rather than a liability policy. *See generally Tri City Nat'l Bank v. Federal Ins. Co.,* 2004 WI App 12, ¶ 13, 268 Wis. 2d 785, 674 N.W.2d 617. The two types of policies insure against different risks. Whereas a liability policy covers the liability of the insured to a third party, a fidelity policy serves to indemnify the insured for the loss of property the insured sustains due to employee dishon-

esty. *Id.* Thus, the Travelers policy does not cover Meriter's vicarious liability for damages to a third party.

¶ 27. In addition, the "Coverage" provision in the policy provides coverage "for loss of . . . Covered Property *resulting directly from* [employee dishonesty]." (Emphasis added.) The undisputed facts discussed above demonstrate that Meriter has not suffered any loss of property whatsoever, much less a direct loss of property, as a result of Malek's embezzlement. A typical case in which an insured would be legally liable for the direct loss of property arising out of an employee's dishonesty would be where the insured is the bailee or trustee of property. *See Vons Cos., Inc. v. Federal Ins. Co.,* 212 F.3d 489, 491 (9th Cir. 2000). A bailment is created by delivery of personal property from one person to another, to be held temporarily for the benefit of the bailee, the bailor, or both under an express or implied contract. *Bushweiler v. Polk County Bank,* 129 Wis. 2d 357, 359, 384 N.W.2d 717 (Ct. App. 1986). No bailment existed over the Medical Staff account or the funds in the account and, in any event, Meriter does not contend that it was either the bailee or trustee of the funds.

¶ 28. Based on the undisputed facts, we conclude that Meriter is not legally liable for the funds in the Medical Staff account. We therefore conclude that the commercial coverage policy does not cover the loss to the Medical Staff bank account under the "legally liable" provision.

¶ 29. For the reasons discussed above, we conclude that the circuit court did not err by entering summary judgment in favor of Travelers.

*By the Court.*—Judgment affirmed