COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2018AP1787**

Cir. Ct. No.  2018CV5

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

MIDWEST HOTELS & MOTELS OF SHAWANO, LLC,

  PLAINTIFF-RESPONDENT,

 V.

AKJ DEVELOPMENT CORP. AND PHILLIP S. ANELLO,

  DEFENDANTS-APPELLANTS.

          APPEAL from a judgment of the circuit court for Shawano County: JAMES R. HABECK, Judge.  *Affirmed.*

          Before Stark, P.J., Hruz and Seidl, JJ.

          **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   AKJ Development Corp., and Phillip S. Anello (collectively "Anello")[1] appeal from a summary judgment granted in favor of Midwest Hotels & Motels of Shawano, Inc. (Midwest Hotels).  Anello raises two issues: (1) the circuit court erred in determining that a 6% interest rate applied throughout the repayment period of the parties' land contract; and (2) the court erred by deciding disputed issues of fact at the summary judgment stage concerning Midwest Hotels' payments under the land contract.  We reject Anello's arguments and affirm.

## BACKGROUND

¶2    Anello was the owner of three separate properties—a hotel, a residence, and a vacant lot.  All three properties were sold to Midwest Hotels by three separate land contracts.  The hotel land contract dated October 30, 2004, provided for a purchase price of $1.6 million, with a $50,000 down payment, and monthly payments the amount of which were changed periodically by agreements of the parties.[2]  The interest rate on the unpaid principal balance under the hotel land contract was 6%.  The hotel land contract also provided that amendments to the document could only occur in writing signed by all parties.

¶3    When the parties entered into the hotel land contract, the hotel was subject to a mortgage securing Anello's loan from a lender.  The interest rate on

---

[1] On April 2, 2013, AKJ assigned its interest in the hotel land contract to Anello.  In connection with the assignment, AKJ also executed a quitclaim deed transferring legal title in the hotel to Anello.  AKJ was dissolved on December 9, 2014, and Anello stands in its shoes for purposes of the relevant land contracts.  We refer to them together throughout our opinion as "Anello."

[2] It is undisputed that Midwest Hotels paid over $2.1 million under the hotel land contract.

the mortgage note was also 6%. The hotel land contract did not provide for an adjustment in the interest rate of 6% should the interest rate on the mortgage note increase.

¶4 The mortgage note matured on January 1, 2007, and it was renewed by Anello's lender on January 5, 2007. The renewal note provided for a 7.5% interest rate. On April 15, 2007, the parties amended the hotel land contract to contain the following language regarding the interest rate to be charged under the land contract: "The hotel and residence are currently mortgaged. *If* the interest rate on said mortgages increases, *then* the interest rates under the land contracts *will be* adjusted accordingly."[3] (Emphases added.)

¶5 After making its July 2017 payment on the hotel land contract, Midwest Hotels believed that it had fully paid the hotel land contract purchase price and did not make payments for three months. Anello issued a notice of default, contending that amounts were still due and owing because of subsequent modifications that had raised the interest rate on the hotel land contract. In response to the notice of default, and to avoid termination of the land contract, Midwest Hotels tendered the three payments. When Midwest Hotels did not make the following payment, Anello again gave notice of default in January 2018. Prior to any foreclosure, however, Midwest Hotels filed the present lawsuit seeking a declaration that it had fully performed the land contract, and that it was entitled to a warranty deed as well as return of any overpayment. The parties stipulated that Midwest Hotels would pay into court the monthly payments during the pendency

---

[3] After the execution of the April 15, 2007 amendment, the mortgage note was renewed again on January 27, 2010, but the interest rate on the mortgage note decreased to 6.5%. The maturity date on the January 27, 2010 note was February 15, 2013.

of the litigation, and additional payments totaling $75,000 were made by Midwest Hotels to the clerk of the circuit court.

¶6      The circuit court granted Midwest Hotels' motion for a temporary injunction against any action by Anello to terminate the land contract, including issuing notices of default or failure to cure default. The court subsequently granted summary judgment in favor of Midwest Hotels, determining that the unambiguous terms of the April 15, 2007 amendment required adjustments in the hotel land contract interest rate only if the mortgage interest rate increased after the date of the amendment to the hotel land contract.[4] Because the rate of interest under the mortgage note did not increase after the April 15 amendment, the court determined that the hotel land contract rate of interest remained at the original 6%. The court rejected Anello's argument that extrinsic evidence would show the parties intended that the interest rate provision in the April 15 amendment would apply retroactively to the first renewal note, thereby increasing the interest rate under the hotel land contract to 7.5% effective with the date Anello's mortgage interest rate increased. The court concluded, "The seller's position that an oral amendment occurred is contrary to the original provision of the [] contract requiring all amendments to be in writing."

¶7      The circuit court also resolved Anello's allegations regarding Midwest Hotels' insufficient payments resulting from its issuing nonsufficient funds checks and incurring late fees. The court determined that existing bank records showed the checks were redeposited and thereafter cleared the bank. The

---

[4] Anello requested summary judgment in his brief in opposition to summary judgment, but he did not file a cross-motion for summary judgment.

4

court thus ordered Anello to deliver a deed to the hotel. The court also concluded Midwest Hotels' payments exceeded the hotel land contract purchase price, and it ordered the clerk of courts to return the funds to Midwest Hotels to the extent of overpayment. Anello now appeals.

## DISCUSSION

¶8      We review summary judgment decisions independently, applying the same methodology as the circuit court. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568. Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[5] Contract language that is reasonably and fairly susceptible to more than one construction is ambiguous. *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶35, 296 Wis. 2d 273, 722 N.W.2d 633. We look to the plain and ordinary meaning of words, and if a contract is unambiguous our attempt to determine the intent of the parties ends with the four corners of the contract, without considering extrinsic evidence. *Huml v. Vlazny*, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807.

### I. Interest Rate

¶9      Anello argues the April 15, 2007 amendment is ambiguous and the circuit court erred by not considering extrinsic evidence to determine the parties' intent. Anello contends that upon entering into the amendment to the hotel land

---

[5] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

contract, "the parties understood the Interest Rate Provision to include the interest rate increase from 6.0% to 7.5% that occurred with the 2007 Renewal Note so that the interest rate on the Hotel Land Contract should be adjusted from 6.0% to 7.5%." Anello further argues that at the very least, the interest rate provision in the April 15 amendment is ambiguous because "it does not indicate when the parties intended the provision to become effective." Therefore, Anello asserts extrinsic evidence "should have been weighed to determine the parties' intent."

¶10 We agree with the circuit court that the April 15, 2007 amendment is unambiguous. The original interest rate under the hotel land contract was 6%. When the parties entered into the hotel land contract, the hotel was subject to a mortgage securing a loan, and the interest rate on the mortgage note evidencing the loan was also 6%. The land contract did not originally include a provision tying the rate of interest in the land contract to the rate of interest under the mortgage loan. Consequently, an increase in the rate of interest under the mortgage note did not affect the interest rate under the hotel land contract.

¶11 The interest rate provision in the April 15, 2007 amendment to the land contract begins with a conditional clause: "*If* the interest rate on said mortgages increases, *then* the interest rate under the land contracts *will be* adjusted accordingly." (Emphases added.) The increase in the interest rate with the renewal mortgage note from 6.0% to 7.5% occurred prior to the April 15 amendment to the hotel land contract. Quite simply, the rate of interest under the mortgage note never increased above the 7.5% rate already in effect at the time the parties entered into the April 15 amendment to the hotel land contract.

¶12     Anello argues the interest rate provision could very reasonably be interpreted as adjusting "in accordance with any increases in the mortgages." Anello contends:

> Consider for example, the following sentence: "if water is heated to 100 degrees Celsius, it will boil." That sentence sets out a rule—if one thing happens, then another thing happens. The rule applies in the past, present and future. Without additional language limiting application of the rule to some set time period (e.g., past, present or future), the sentence itself is merely a conditional sentence that sets out a rule. It is a rule that applies any time.

¶13     However, the interest rate provision in the April 15, 2007 amendment is not such a universal statement of cause and effect. Here, it is not invariably true that if the rate of interest in the original mortgage increases, the rate of interest under the hotel land contract automatically increases retroactively. The April 15 amendment provided: "if" the interest rate on the mortgage increased, "then" the interest rate under the hotel land contract "will be" adjusted accordingly. By using the terms "if" and "then … will be," the April 15 amendment unambiguously applied only to future rate adjustments. There is no language in the amendment that suggests it applied retroactively. It is undisputed that the rate of interest on the mortgage note did not increase after the April 15 amendment. In fact, the rate on the mortgage note subsequently fell. Accordingly, under the unambiguous provisions of the April 15 amendment, the rate of interest under the hotel land contract remained at 6%.

¶14     Moreover, as the circuit court correctly observed, a February 20, 2013 addendum to the land contract provided at paragraph 2: "Except as expressly modified herein, all other terms and conditions of the Land Contract dated October 30, 2004 remain in full force and effect." Further, that 2013

addendum provided, "Purchaser has been making payments on the Land Contract in accordance with the agreement of the parties." These addendum terms confirm a continuum of the 6% interest rate on the unpaid principal balance under the 2004 hotel land contract, and confirm that all payments due prior to that date were paid. Midwest Hotels was entitled to rely upon the 2013 addendum terms and Anello is estopped from now claiming that payments due prior to that addendum were not paid. *See Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶33, 291 Wis. 2d 259, 715 N.W.2d 620.

¶15 Nevertheless, Anello argues the January 5, 2007 mortgage note renewal had a three-year term and a fixed interest rate of 7.5%. Anello therefore contends that at the time of the April 15, 2007 amendment he knew his interest rate on the mortgage note would not change for three years. According to Anello, interpreting the interest rate provision of the April 15 amendment to apply solely to future increases in the mortgage note some three years in the future would be "absurd." This argument is underdeveloped, but regardless, Anello knew that upon further renewal of the note, he could be faced with an interest rate of even more than 7.5%. Thus, the amended hotel land contract would protect him if the mortgage interest rate further increased in three years. In any event, words of a contract may not be legitimately bent out of their ordinary meaning merely because a firm contract may result. *McQuillan v. Mutual Reserve Fund Life Ass'n*, 112 Wis. 665, 676, 87 N.W. 1069 (1901) (on denial of rehearing).

## II. Disputed Payments

¶16 Anello next argues that the circuit court erroneously made findings of fact at the summary judgment stage when genuine issues of material fact existed as to Midwest Hotels' payments under the land contract. In this regard,

Anello disputes the payment history because of two checks that were returned for insufficient funds.[6]

¶17    Anello argues that bank statements he filed in opposition to summary judgment "show five total deposits of $20,000 in the period between February and April of 2008, and further show that two of the $20,000 deposits were reversed for NSF." Anello contends that he "initially believed that the three good payments were dated February 20, 20[08], March 31, 20[08], and April 23, 20[08]." Anello argues, "It now appears that one February payment and the March 31, 20[08] payment were the deposits that were returned NSF."

¶18    Anello's argument in this regard is disingenuous. In the circuit court, Midwest Hotels submitted affidavits in support of summary judgment establishing that check number 1687, signed by Midwest Hotels' managing member Steven Theys on his joint account for $10,000, was returned for insufficient funds. The affidavit also established that "Notice of Items Being Paid Against Insufficient Funds" identified check number 1687 as one of the items resubmitted and paid.

¶19    In his brief in opposition to summary judgment, Anello withdrew his objection to the February payment. Anello conceded as follows: "It is believed that the March 31, 2008 payment on the amortization is the resubmitted payment on Midwest Hotels' check dated February 22, 2008. For that reason, it is believed the parties are in agreement on that payment …."

---

[6] Anello does not appeal issues regarding late fees and we shall not further discuss those issues.

¶20    As a result of Anello's concession in the circuit court regarding the February 22, 2008 payment, his challenge below was limited to the April 2, 2008 payment. Anello argued:

> There are two sets of payments on Midwest Hotels' payment history that require some clarity:
>
> - $10,000 NSF check dated February 22, 2008
>
> - $10,000 NSF check dated April 2, 2008.
>
> For the reasons set out below, the $10,000 NSF check dated April 2, 2008 should be removed from Midwest Hotels' payment history.

¶21    Anello further argued in the circuit court that the "$10,000 payment dated April 2, 2008 on Midwest Hotels' payment history should be removed so as not to credit an NSF check toward the principal and interest owing on the Land Contract." In other words, Anello conceded in the circuit court that one of the two disputed NSF $10,000 payments was in fact made good—and only the April 2, 2008 NSF payment was at issue.

¶22    The circuit court determined no genuine issue of material fact was presented on the issue of the second disputed payment dated April 2, 2008. It concluded as such because, as bank records identified as Exhibits I and J submitted in support of summary judgment unequivocally demonstrated, Midwest Hotels issued a replacement check from its own account to replace the Theys' NSF check from April. Theys' affidavit in support of summary judgment reinforces the court's determination in that regard:

> Exhibit I is a copy of a check for $10,000, number 1114, dated April 2, 2008, payable to Mr. Anello for the April 2, 2008 payment on the attached list of Hotel Land Contract payments. The check was drawn on the Midwest Hotels account at Fidelity Bank to replace a check I had written for that payment. Attached as Exhibit J is a copy of the

> Fidelity Bank Statement for April 2008 reflecting that the payment was made out of the account.

¶23 Anello failed to show how the circuit court erred in relying upon Exhibits I and J to determine the April 2, 2008 payment was made. It was his burden to respond to the prima facie case made by the moving party. On appeal, Anello claims the exhibits "referenced by the circuit court involve payments by Midwest Hotels, not Steven Theys, and so do not contradict Anello's bank statements showing returned NSF checks of Steven Theys." This argument borders on the frivolous, as it is immaterial that Midwest Hotels made payment rather than Theys. Anello cites nothing establishing that the identity of the payor was a material consideration.

¶24 Although Anello's brief in opposition to summary judgment sought only to challenge the April 2, 2008 payment, he now attempts to raise entirely new arguments on appeal. Anello claims on appeal that regardless of which checks were returned NSF from February through April 2008, Midwest Hotels is only entitled to credit for having made three $20,000 payments during this period. Anello argues:

> Bank statements provided by Anello show five total deposits of $20,000 in the period between February and April of 2008, and further show that two of the $20,000 deposits were reversed for NSF:
>
> - Feb. 20, 2008, deposit of $20,000
>
> - Feb. 25, 2008, deposit of $20,000
>
> - **Feb. 26, 2008: three checks totaling $20,000 returned for NSF, payor: Steven Theys**
>
> - March 31, 2008, deposit of $20,000
>
> - April 2, 2008, deposit of $20,000

- **April 7, 2008: three checks totaling $20,000 returned for NSF, payor: Steven Theys**

- April 23, 2008, deposit of $20,000

> Because two of the five deposits were returned for NSF, only three deposits should be credited during this period.

(Emphases in original.)

¶25    Anello contends on appeal that these are not new arguments because "[t]he Affidavit of Sandra Keene filed on behalf of Anello shows only three payments during that time on the Hotel Land Contract." Again, this contention is disingenuous. Even a cursory review of Anello's brief in opposition to summary judgment reveals Anello challenged only the April 2, 2008 payment in the circuit court, and even with regard to that single challenge, the circuit court was not apprised of Anello's current arguments. Anello's argument is a moving target, and he will not be heard to raise new arguments on appeal. *See* ***Townsend v. Massey***, 2011 WI App 160, ¶19, 338 Wis. 2d 114, 808 N.W.2d 155.[7]

¶26    Anello next argues genuine issues of material fact exist regarding whether payments on the residence and vacant lot were misapplied to the hotel land contract. Anello points out that Midwest Hotels was required to make monthly payments on each of the land contracts for the hotel, the residence, and the vacant lot. After the vacant lot and residence were paid off, the excess payments were then applied entirely to the hotel land contract. Anello

---

[7] Midwest Hotels argues Anello's failure to raise an issue in the circuit court waives the issue on appeal, citing ***Evlen v. Evlen***, 171 Wis. 2d 677, 688, 492 N.W.2d 361 (Ct. App. 1992). We do not view this as a forfeiture of an issue not raised below, as Anello raised the general issue of checks returned for insufficient funds. Rather, we focus on whether Anello failed to raise particular arguments below, not whether general issues were raised in the circuit court. *See* ***Townsend v. Massey***, 2011 WI App 160, ¶19, 338 Wis. 2d 114, 808 N.W.2d 155.

contends: "To the extent that Midwest Hotels' payment histories for the Vacant Lot and the Residence were different from Anello's payment histories because of the NSF checks, those were also factual disputes that were material to the total amount due to Anello on the Hotel Land Contract." Anello further argues: "Here again, to the extent that the amortizations attached to [Anello's amortizations] and the amortizations attached to [Midwest Hotels'] amortizations are different, those differences are genuine issues of material fact …."

¶27     The problem with this argument is that Anello's payment schedule appended to the affidavit filed in opposition to summary judgment assumed the following interest rates applicable for the hotel land contract:

> 4. Attached hereto as Exhibit A is a payment schedule for the Hotel ("Hotel Amortization") prepared by me based on payment history provided to me by Phillip S. Anello and/or his counsel.
>
> 5. The Hotel Amortization applied the following interest rates:
>
>> a. 6.0% interest rate beginning October 30, 2004;
>>
>> b. 7.5% interest rate beginning January 5, 2007;
>>
>> c. 6.0% interest rate beginning February 20, 2013.

¶28     Accordingly, Anello's argument regarding "misapplied payments" is improperly premised on the assumption that the hotel land contract had an interest rate of 7.5% between January 5, 2007 and February 20, 2013. We have determined that the interest rate under the hotel land contract remained at 6% during that time period. Anello incorrectly calculated the payoff on the residence and vacant lots because of the incorrect interest rate he used. In addition, we rejected Anello's argument that he was entitled to additional funds due to NSF

checks.  Anello has thus failed to carry his burden of coming forward with specific evidence of a genuine issue of material fact.

¶29     Finally, Anello argues that this court should "review the payment histories for all three land contracts in order to ensure that the parties agree as to the payoff date of the Residence, Vacant Lot and Hotel …."  He argues that to the extent the parties' amortization schedules are different there is a material issue of fact.  But Anello fails to develop any argument in this regard.  It is not this court's obligation to review the record on appeal to support a party's argument.  *See Fuller v. Riedel*, 159 Wis. 2d 323, 330 n.3, 464 N.W.2d 97 (Ct. App. 1990).

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.