FIRST FEDERAL FINANCIAL SERVICE, INC., a Wisconsin corporation, Plaintiff-Appellant,†

v.

DERRINGTON'S CHEVRON, INC., a/k/a Derrington's Chevron Station, Inc., and James Derrington, jointly and severally, Defendants-Respondents.

Court of Appeals

*No. 98–2763. Submitted on briefs July 30, 1999.—Decided September 22, 1999.*

(Also reported in 602 N.W.2d 144.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jonathan H. Dudley* of *Howard, Solochek & Weber, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Kim M. Peterson* of Milwaukee.

Before Brown, P.J., Anderson and Snyder, JJ.

BROWN, P.J. This is an unconscionability case that arises out of a finance lease. A finance lease is a three-party transaction involving a supplier, a finance lessor and a finance lessee. *See* U.C.C. § 2A–103(g), official cmt. The finance lessor's role in the transaction is limited to providing the funds for the transaction, not the goods. *See id.* Such arrangements, far from being unlawful, are beneficial to commerce as they facilitate the purchase of goods. But, as with any contract, there must be a meeting of the minds in the formation of the agreement. Contractual freedom is not furthered when one of the parties is dealing with incomplete information. That is what happened in this case. Here, the lessees did not freely enter into the contractual relationship, at least not so far as the venue clause in the lease goes. The trial court found unconscionable the jurisdictional clause setting jurisdiction in Waukesha county. The lease was signed by lessees in California who were solicited by a salesperson in California. The trial court focused on the fact that the terms of the lease were never explained to the lessees and that the lessor drafted the lease. Furthermore, from the face of the document it appeared that the contracting party was the supplier, not the finance lessor. The jurisdictional clause was on the back of the lease and the signer never read it. We agree with the trial court that the jurisdictional provision in the lease is both procedurally and substantively unconscionable. We therefore affirm.[1]

---

[1] We note that it is not entirely clear if the lease would qualify as a finance lease under U.C.C. art. 2A (codified in Wisconsin at ch. 411, STATS.). In order to be a finance lease under that chapter, it must fulfill the requirements of

The dispute concerns the lease of security equipment to a service station. James and Margaret Derrington own Derrington's Chevron Station, Inc., in Sonoma, California. In April 1997, a marketing representative of Western Security and Surveillance called James on the phone. That same day, the salesperson came to the station and demonstrated several pieces of surveillance equipment, offering to sell them to James for monthly payments of $307.45 over a term of thirty-nine months. James said that he preferred to pay cash outright, but the salesperson responded that if he did so he would not receive the twenty-four-hour service option on the equipment. James agreed to lease the equipment from Western Security and signed a work order. This work order did not mention First Federal Financial Service, Inc. (FFF). James thought he was signing the lease. A few days later, after the equipment had been installed, a Western Security representative approached Margaret and asked her to sign James's name on an agreement, which she did. She testified that she thought she was signing "an okay for the equipment." She said she never saw the back page of the document and did not know it existed. But there was a back page to the lease Margaret signed. It contained sixteen separate additional provisions, including the jurisdictional clause at issue in this case.[2]

---

§ 411.103(1)(g), STATS. The parties did not address this issue and we do not discuss it. The agreement, however, is the type of arrangement known as a finance lease.

[2] The clause reads:

CONSENT TO WISCONSIN LAW, JURISDICTION, VENUE, AND NON-JURY TRIAL. Lessee and Guarantor consent and agree and stipulate that: (a) this lease shall be deemed fully executed and performed in the State of Wisconsin and shall be governed by and

The lease relationship went sour when the security equipment quit working about two weeks after it was installed. James testified that his attempt to get Western Security to fix the system was in vain. So he called FFF, thinking it was "part of this contract." According to James, the person at FFF whom he told that the system did not work responded, "I don't care." Because they were dissatisfied with the equipment and service, the Derringtons quit making payments. FFF filed suit in Waukesha county to collect on the debt, basing venue on the jurisdictional clause in the lease. The trial court found the clause unconscionable and dismissed the case. FFF appeals.

Generally, unconscionability is defined as "the absence of a meaningful choice on the part of one party, together with contract terms that are unreasonably favorable to the other party." *Leasefirst v. Hartford Rexall Drugs, Inc.,* 168 Wis. 2d 83, 89, 483 N.W.2d 585, 587 (Ct. App. 1992). Factors to be considered when determining whether a contract provision is unconscionable fall into two categories—procedural and

construed in accordance with the laws thereof; (b) any action proceeding or appeal on any matter related to or arising out of this Lease the Lessor, Lessee and Guarantor; 1) shall be subject to personal jurisdiction of the State of Wisconsin and that any action or proceeding shall be commenced in the appropriate court in the County of Waukesha, State of Wisconsin; and 2) if appropriate for the Federal Court, the Lessor and Lessee agree that the action shall be commenced in the District Court for the Eastern District of Wisconsin, Milwaukee Division and; (c) expressly waive any right to a trial by jury so that the trial shall be by and only to the court.

We note that the print is much smaller than the print in this footnote. The paragraph measures only 2.5 inches by one inch, which is less than three percent of the area on the back of the page.

substantive. *See Discount Fabric House, Inc. v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 602, 345 N.W.2d 417, 424 (1984).

> Under the 'procedural' rubric come those factors bearing upon . . . the 'real and voluntary meeting of the minds' of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The 'substantive' heading embraces the contractual terms themselves, and requires a determination whether they are commercially reasonable.

*Id.* at 602, 345 N.W.2d at 425 (quoted source omitted). In order for a contract clause to be held unenforceable as unconscionable, both procedural and substantive unconscionability must be present. *See id.*

Whether a forum selection clause is unconscionable is a question of law we review de novo. *See Leasefirst*, 168 Wis. 2d at 89, 483 N.W.2d at 587. However, because the elements of procedural unconscionability are so intertwined with the factual findings, we give weight to the trial court's conclusions on that prong. *See id.* We conclude, as did the trial court, that the clause here was both procedurally and substantively unconscionable.

The facts of this case are closely parallel to those in *Leasefirst*. There, a salesperson approached Jack Reinholz at his drug store, Hartford Rexall Drugs, selling a video machine. A Michigan corporation distributed the machine, but the lease was with

Leasefirst, a third-party financing company. The lease contained a forum selection clause whereby Reinholz submitted to jurisdiction in Michigan or any other state selected by Leasefirst. When Reinholz exercised his option to return the machine to the distributor, Leasefirst commenced an action in Michigan for breach of contract. Reinholz did not appear and the Michigan court entered a default judgment against him. After the judgment was docketed in Wisconsin, Reinholz moved the Wisconsin court to grant relief from the judgment, arguing that it was void. *See id.* at 88, 483 N.W.2d at 587; § 806.07(1)(d), STATS. The trial court found the clause unconscionable, and this court affirmed as follows:

> There is procedural unconscionability here because the clause was not explained or even mentioned by the salesperson. The clause was written in small print. Reinholz did not read it. The salesperson did not completely disclose the number of parties involved in the transaction or their relationship to each other.
>
> . . . .
>
> There is also a quantum of substantive unconscionability in the clause itself. The uncontemplated inconvenience caused by the clause is a factor in deciding whether the clause is unreasonable. The clause gives Leasefirst the exclusive and absolute right to pick any forum where Leasefirst does business.

*Leasefirst*, 168 Wis. 2d at 90, 483 N.W.2d at 588 (citation omitted).

The deciding procedural factors in *Leasefirst* are also present in this case, as shown by the trial court's well-supported findings. The trial court found two

issues salient—that FFF drafted the contract and that the contract terms were not explained to the Derringtons. The court noted that as far as the Derringtons were concerned FFF "had no persona" because the Derringtons "dealt strictly with Western Security." Prominent at the top of the lease are the names of Western Security and Derrington's Chevron; while FFF's name does appear on the lease, it is not conspicuous. We agree with the trial court that this ghost-like presence of FFF as a party to the contract tips the scale in favor of procedural unconscionability. Furthermore, the trial court found that the Derringtons did not read the lease, that no copy of the lease was provided to them when the lease was signed, and that Margaret was "in no way alerted to the terms on the back of the agreement" when she signed the lease. In sum, procedural unconscionability was established.

■

Before proceeding to our discussion of substantive unconscionability, we pause briefly to address FFF's argument that the Derringtons were not in an unequal bargaining position. FFF rests its argument on two facts: that the Derringtons have been in the service station business for over thirty years and that there were other sources available for the security system. FFF makes much of the fact that James, who "was in the market for security equipment," "did not even put forth any effort to determine what other options he had for purchasing this equipment." True, James did not shop around for his security system. That is because he was actively solicited by Western Security. It is undisputed that a Western Security representative contacted James, not the other way around. The agent came into the station on that same day to demonstrate the equipment. When James expressed concern about

doing business with an out-of-state corporation, the agent assured him that Western Security was about to open an office in northern California. Furthermore, when James stated that he wanted to buy the system outright with cash, the agent told him that the only way he could get the full repair package was to lease the system over a thirty-nine-month period. These facts belie FFF's claim that "it is unreasonable to think that Derrington's was the victim of unequal bargaining power."

Now that we have confirmed the trial court's conclusion that the lease was procedurally unconscionable, we turn our attention to the reasonableness of the contract terms themselves. The clause required the Derringtons to submit to jurisdiction in Waukesha County, Wisconsin. As in *Leasefirst*, the provision could lead to considerable inconvenience and expense for the Derringtons. *See id.* at 90–91, 483 N.W.2d at 588. Furthermore, as the trial court noted, there is no basis for jurisdiction in Wisconsin other than the clause in the lease. The lease was signed in California, the defendants are in California, and the probable witnesses—Western Security employees—are all in California. It does not make sense to try the case in Wisconsin. We thus conclude that the jurisdictional clause in this case is commercially unreasonable, unconscionable and unenforceable.

FFF's reliance on *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 555 N.W.2d 640 (Ct. App. 1996), is misplaced. At issue there was a personal guaranty entered into in conjunction with a two-party distributorship agreement. Kohler sought the guaranty when Wixen began to experience financial troubles. The parties discussed its terms and Wixen added language to Kohler's draft

limiting the temporal scope of the agreement. This court affirmed the trial court's conclusion that "it was not unreasonable for a large multinational corporation headquartered in Wisconsin to draft a contract requiring all litigation between it and a distributor to take place in its home state." *Id.* at 341, 555 N.W.2d at 646. FFF seizes upon the fact that Derrington's Chevron is a corporation and likens the security equipment lease agreement to the guaranty in *Kohler*. But this case is much more similar to *Leasefirst* than to *Kohler*. In *Kohler*, Wixen entered into the personal guaranty *directly with Kohler* to sustain an established distributor relationship so that he would be ensured of a continued supply of merchandise for his business. Furthermore, Wixen not only read the agreement with Kohler, he added his own terms to Kohler's draft.

Here, the Derringtons thought they were entering into an agreement with Western Security to obtain a new security system touted to them by a Western Security salesperson. In fact, they were entering into a lease with FFF, a Wisconsin credit agency. As such, this case is much like *Leasefirst*, where Reinholz obtained the video machine from a salesperson but entered into a lease with an absentee creditor. *See Leasefirst*, 168 Wis. 2d at 86, 483 N.W.2d at 586. This lease was presented to Margaret just days after the work order was completed between James and a Western Security representative. It was thus reasonable for her to think that her husband had already made the agreement and that she was merely signing an acknowledgement of installation. That is good reason for her not to have read the document she signed—the sequence of events hid its import. But even if she had known she was signing the lease she would not have had an opportunity to negotiate its terms because she

was dealing with a representative from Western Security, not FFF. This is a *Leasefirst* case, not a *Kohler* case.

Neither are we persuaded that the "terms are fair and reasonable because FFF has to assume the total risk in the transaction." True, FFF does not have physical possession of the equipment and must rely on the lease for security. But that is inherent in extending credit. And FFF did not assume the total risk. The Derringtons took the chance that the leased equipment would malfunction—which it did—but, unlike FFF, they had no clue when they entered into the agreement just how great a risk this was. Little did they know that any dispute over payment would have to be resolved in a forum some 1800 miles from their business. The nature of FFF's business is such that its leases are apparently peddled nationwide. It cannot sit in its offices in southeastern Wisconsin and expect lessees from across the country to march to Waukesha county to defend themselves from collection actions. FFF argues that "[a]ny inconvenience that may arise by litigating this dispute in Waukesha County must be measured against the low, monthly lease payments Derrington's was required to make for the leased equipment." But there is no evidence in the record that the credit terms were so favorable. And James testified that he would have preferred to pay cash. The party getting the deal was FFF—it was guaranteed a home court while the Derringtons were stuck with security equipment that did not work and a lawsuit in Waukesha, Wisconsin. Furthermore, we fail to see how it would be so much more expensive for FFF to litigate this collection action in California. Debt collection attorneys typically work on a contingency fee basis. It would not be terribly inconvenient for FFF to hire a Sonoma county debt collection firm. In short, FFF's

assertions of substantive conscionability do not persuade us.

Although the possible application of U.C.C. article 2A to this lease is not at issue, we pause to comment on that section's requirements to illustrate the importance of complete information when creating a finance lease agreement. Article 2A strikes a balance between the rights of the finance lessor and the lessee. In return for the extension of credit, the finance lessor is exempt from the implied warranties of merchantability and fitness for a particular purpose. *See* U.C.C. §§ 2A–212, 2A–213. The lessee, however, gets the benefit of any warranties made to the lessor by the supplier. *See id.* § 2A–209. Because of this, the lessee must be apprised of the terms of the supply contract in order for the arrangement to qualify as a finance lease under the code. *See id.* § 2A–103(g)(iii). *See generally* Steven R. Schoenfeld, *Commercial Law: The Finance Lease Under Article 2A of the Uniform Commercial Code,* 1989 ANN. SURV. AM. L. 565 (1991). Thus, in order for the lessor to reap the benefits of article 2A's protections from liability when the supplier provides faulty products, the lessee must be fully aware of the nature of the relationship between the three parties. Such a well-informed meeting of the minds did not occur in this case, where an uncontemplated jurisdictional clause was slipped in on the back of the lease document in extremely small print. While FFF may blame the quality of the goods, the availability of service and the nature of the sales techniques on Western Security, it must accept responsibility for the form it created. Furthermore, if FFF is willing to enter into a symbiotic relationship with Western Security, it must bear some of the brunt when Western Security's marketing schemes are criticized.

FFF also argues that the trial court erred in failing to admit a verbal audit report conducted by FFF and a letter from James to FFF's attorney. Decisions on admissibility of evidence are within the broad discretion of the trial court and we will overturn the trial court's determination only if it represents a prejudicial misuse of discretion. *See Nowatske v. Osterloh*, 201 Wis. 2d 497, 503, 549 N.W.2d 256, 258 (Ct. App. 1996). Furthermore, even if an error occurs, "[a] reversal is required . . . only if the result might, within reasonable probabilities, have been more favorable to the complaining party had the error not occurred." *Id.* at 507, 549 N.W.2d at 259. Here, our review of the evidence satisfies us that the exclusion of these items did not affect FFF's substantial rights. *See* § 805.18(2), STATS. FFF itself fails to call our attention to how these two documents would have influenced the trial court's conclusions. We thus do not address this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).

*By the Court.*—Order affirmed.