PIETROSKE, INC., Plaintiff-Respondent,†

v.

GLOBALCOM, INC., Defendant-Appellant.

Court of Appeals

*No. 03–2389. Submitted on briefs May 17, 2004.—Decided June 16, 2004.*

**2004 WI App 142**

(Also reported in 685 N.W.2d 884.)

† Petition to review denied 9-1-04.

444

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles David Schmidt* of *Cannon & Dunphy, S.C.*, Brookfield, and *M. Gavin McCarty* of *Globalcom, Inc.*, Chicago, admitted pro hac vice.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Ralph J. Sczygelski* of *Sczygelski Law Firm, LLC.*, Manitowoc.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J. In Wisconsin a forum-selection clause is presumptively valid. A court will refuse to enforce the clause only if there is a quantum of

procedural unconscionability plus a quantum of substantive unconscionability. Because the circuit court did not properly balance procedural and substantive unconscionability, we reverse.

¶ 2. Robert Pietroske has forty-two years of business experience, the last twenty-seven years as the owner of Pietroske, Inc., a General Motors dealership. Robert is solely responsible for negotiating business contracts, including contracts for telecommunication services. On March 14, 2000, on behalf of Pietroske, Inc., Robert entered into a contract with Globalcom, Inc., for telephone services. The contract, prepared by Globalcom, is a one-sheet standard form contract or service agreement; the front side is a series of sections with fill-in-the-blanks to gather specific information on the services Globalcom will provide to the buyer. At the bottom of the front side is "Section 9 Customer Authorization," which contains the following language immediately above the customer's signature: *"The customer understands and agrees that all of Globalcom® services are provided under . . . the terms and conditions set forth on the reverse side of this form."* The reverse side is two columns, in one size typeface, and contains general terms of the service agreement, including guarantee, cancellation/default, interruption of service, payment and billing, and liability. The last two sentences of paragraph "g" of cancellation/default provide: *"Customer agrees that all disputes will be under the laws of the State of Illinois. Venue shall be in Cook county, Illinois."*[1]

---

[1] We note that the contract at issue did not contain a choice of law clause.

¶ 3. In March 2003, Pietroske, Inc., commenced an action against Globalcom alleging breach of contract, strict responsibility and negligent misrepresentation. Globalcom responded with an answer and a motion to enforce the forum-selection clause by transferring venue to Cook county, Illinois. In opposition to the motion, Robert filed an affidavit in which he stated that the forum-selection clause was not specifically pointed out to him and that he did not read the service agreement before he signed as owner of Pietroske, Inc.

¶ 4. The circuit court denied the motion. In its oral decision, the circuit court conducted both a substantive and a procedural unconscionability analysis. The court held that the forum-selection clause was unreasonably favorable to Globalcom.

> The court will, however, conclude that—that a contract term that provides in all situations that a contract is going to be resolved in the seller's home court is certainly favorable to the seller or the defendant in this case. And I will conclude that where the contract does include that language, and there's been no specific mention of that language, nor has it been called to the attention of the purchaser, in this case the plaintiff, one could conclude that that contract term is unreasonably favorable to the other party. That is, it's not a bargain for benefit, it's not something that the other side signed off on specifically, although obviously it wasn't read.

Globalcom sought leave to appeal from the order denying its motion to enforce the forum-selection clause. We granted its petition because an appeal would materially advance the termination of the litigation. WIS. STAT. § 808.03(2)(a) (2001–02).[2]

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 5. Before us, Globalcom contends that the forum-selection clause is unambiguous, reasonable and enforceable.

> The rule of law in Wisconsin is that a forum selection clause is enforceable unless the contract provision is substantively unreasonable in view of the bargaining power of the parties. The conclusion that a contract clause is or is not valid involves determinations of fact and law. An evidentiary hearing is required to enable the court to make the necessary factual findings to support a conclusion that a clause is unconscionable.

*Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 88–89, 483 N.W.2d 585 (Ct. App. 1992) (citations and footnote omitted).

> The trial court's decision that a clause is or is not valid involves determinations of fact and law and will be reviewed as such. The reviewing court will uphold the factual determinations underlying its legal conclusion unless they are contrary to the great weight and clear preponderance of the evidence. Whether the facts fulfill the legal standard, here reasonableness, is a determination of law, and ordinarily the appellate court need not defer to the trial court's determination of a question of law.

*Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983) (citations omitted).

¶ 6. In the context of a forum-selection clause, we are concerned about procedural and substantive unconscionability. *Leasefirst*, 168 Wis. 2d at 89. "Procedural unconscionability relates to factors bearing on the meeting of the minds of the contracting parties; sub-

stantive unconscionability pertains to the reasonable-ness of the contract terms themselves. The balance tips in favor of unconscionability when there is a certain quantum of procedural plus a certain quantum of substantive unconscionability." *Id.* at 89–90. The bal-ancing of procedural and substantive unconscionability requires courts to consider each questionable forum-selection clause on a case-by-case basis and precludes the development of a bright-line rule.[3]

¶ 7. We conclude that there is no substantive unconscionability in the forum-selection clause. It is reasonable for Globalcom to select its headquarters' city as the forum of choice; all of Globalcom's records and employee-witnesses would be located there. In this case, it is reasonable to require Pietroske, Inc., to travel to Cook county to pursue its dispute with Globalcom because Robert is the only employee of Pietroske, Inc., who is authorized to contract for telecommunication

---

[3] *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 88–89, 483 N.W.2d 585 (Ct. App. 1992), summarized a longer discussion about unconscionability in *Discount Fabric House v. Wisconsin Telephone Co.*, 117 Wis. 2d 587, 600–02, 345 N.W.2d 417 (1984); there, quoting from *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976), the Wisconsin Supreme Court described what factors make up procedural unconsciona-bility:

> Under the "procedural" rubric come those factors bearing upon . . . the "real and voluntary meeting of the minds" of the contracting parties: age, education, intelligence, business acu-men and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.

*Disc. Fabric House*, 117 Wis. 2d at 602.

services; consequently, there would be no major personnel or financial impact on Pietroske, Inc. This case is easily distinguishable from *Leasefirst*, where the forum-selection clause gave Leasefirst the exclusive right to select as a forum any state in which it did business; for example, it could select to submit a dispute in Wisconsin to a court in Hawaii if it did business in Hawaii. *See id.* at 90–91. This case can also be distinguished from *First Federal Financial Service, Inc. v. Derrington's Chevron, Inc.*, 230 Wis. 2d 553, 556, 602 N.W.2d 144 (Ct. App. 1999), where the buyer and seller were both located in California and the only contact with Wisconsin was that it was the headquarters for the financing company.

¶ 8. We also conclude that there is no procedural unconscionability. Nothing in the contract prevented a true meeting of the minds. In *Leasefirst*, 168 Wis. 2d at 90, and *First Federal*, 230 Wis. 2d at 561, we held there was not a true meeting of the minds because the existence of a significant party to the contract—the financing company—was never revealed to the buyers. In contrast, in this case, there is no unrevealed third-party to the contract between Pietroske, Inc., and Globalcom. In *Leasefirst*, 168 Wis. 2d at 90, and *First Federal*, 230 Wis. 2d at 557 n.2, we were also concerned that the forum-selection clause was in a small print size; in this case, the clause is in the same size print as all of the terms on the page.

¶ 9. The format of the service agreement does not suggest procedural unconscionability. As previously described, the service agreement is one page, front and back. Directly above Robert's signature is a one-paragraph warning that there were terms and conditions on the reverse side to which Pietroske, Inc., would

be held. The terms and conditions on the reverse side are not lengthy and come close to being in plain English. Likewise, the fact that the service agreement is a boiler plate contract does not prevent a true meeting of the minds. We agree with Judge Posner's observations in *Northwestern National Insurance Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990):

> Ours is not a bazaar economy in which the terms of every transaction, or even of most transactions, are individually dickered; even when they are, standard clauses are commonly incorporated in the final contract, without separate negotiation of each of them. Form contracts, and standard clauses in individually negotiated contracts, enable enormous savings in transaction costs, and the abuses to which they occasionally give rise can be controlled without altering traditional doctrines, provided those doctrines are interpreted flexibly, realistically. If a clause really is buried in illegible "fine print"—or if ... it plainly is neither intended nor likely to be read by the other party—this circumstance may support an inference of fraud, and fraud is a defense to a contract.

¶ 10. This case does have one similarity with *Leasefirst*, 168 Wis. 2d at 90, and *First Federal*, 230 Wis. 2d at 561: the forum-selection clause was not explained to the buyer. However, the failure of the Globalcom representative to point out the forum-selection clause to Robert does not create procedural unconscionability that dooms the clause. Robert has forty-two years of business experience, the last twenty-seven years as the owner of Pietroske, Inc.; in addition, he is the only employee with the authority to enter into contracts for services to be provided to the corporation. With his experience and authority, he cannot hide

behind the failure of the Globalcom representative to point out and explain the forum-selection clause.

¶ 11. Robert, as a savvy businessperson, had an obligation to read the service agreement presented by Globalcom.

> Failure to read a contract, particularly in a commercial contract setting, is not an excuse that relieves a person from the obligations of the contract. "Men, in their dealings with each other, cannot close their eyes to the means of knowledge equally accessible to themselves and those with whom they deal, and then ask courts to relieve them from the consequences of their lack of vigilance." *Nauga, Inc. v. Westel Milwaukee Co., Inc.*, 216 Wis. 2d 306, 314–15, 576 N.W.2d 573 (Ct. App. 1998) (quoting this court's decision in *Carney-Rutter Agency v. Central Office Bldgs.*, 263 Wis. 244, 252–253, 57 N.W.2d 348 (1953)).

*Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 30, 259 Wis. 2d 587, 657 N.W.2d 411, *reconsideration denied*, 2003 WI 91, 262 Wis. 2d 505, 665 N.W.2d 378. As we explained in *Putnam v. Time Warner Cable of Southeastern Wisconsin, Ltd. Partnership*, 2001 WI App 196, ¶ 12 n.3, 247 Wis. 2d 41, 633 N.W.2d 254, *aff'd in part, reversed in part on other grounds*, 2002 WI 108, 255 Wis. 2d 447, 649 N.W.2d 626, Robert's mistake was in not reading the service agreement:

> [I]f it was a mistake at all, [it] may have been one resulting from what could be termed *conscious ignorance*—an ignorance inevitably present in myriad situations in which people simply have no desire, incentive or need to know details that might alter their view of the fairness of a transaction. RESTATEMENT (SECOND) OF CONTRACTS § 154 cmt. c (1979) explains:

*Conscious ignorance.* Even though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake. It is sometimes said in such a situation that, in a sense, there was not mistake but "conscious ignorance." (Citation omitted.)

¶ 12. The circuit court erred when it found the forum-selection clause unenforceable because it had not been pointed out to Robert. The unconscionability question requires a balancing approach. *Deminsky*, 259 Wis. 2d 587, ¶ 27. Before a forum-selection clause can be found to be unenforceable, there must be both a quantum of procedural unconscionability plus a quantum of substantive unconscionability. *See id.* Our independent review fails to uncover either form of unconscionability.

*By the Court.*—Order reversed.