# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1195**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV117

IN COURT OF APPEALS
DISTRICT IV

HORIZON RENTAL, LLC AND MDS ENTERPRISES, INC.,

PLAINTIFFS-APPELLANTS,

V.

AMERICAN WEST WORLDWIDE EXPRESS, INC.,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Horizon Rental, LLC (Horizon) and MDS Enterprises, Inc. (MDS) (collectively, plaintiffs) appeal the circuit court's order granting American West Worldwide Express, Inc.'s (American West's) motion to dismiss the plaintiffs' breach of contract and unjust enrichment claims against it. The court determined that the plaintiffs are prohibited from bringing this action in Wisconsin pursuant to a contractual forum selection clause.

¶2     Based on the plain meaning of the language in the pertinent agreements among the parties, we conclude that: (1) the forum selection clause at issue does not apply to the breach of contract and unjust enrichment claims for unpaid truck rental payments to Horizon and, therefore, does not bar those claims from being brought in Wisconsin; and (2) the forum selection clause at issue does apply to the breach of contract claim for unpaid royalty payments to MDS and requires that that claim be raised only in California state courts. Accordingly, we reverse the circuit court's dismissal of the breach of contract and unjust enrichment claims for unpaid truck rental payments to Horizon, affirm the circuit court's dismissal of the breach of contract claim for unpaid royalties to MDS, and remand for further proceedings.

## BACKGROUND

¶3     The following undisputed facts are taken from the pleadings and affidavits submitted by the parties and considered by the circuit court.[1]

---

[1] The parties presented, and the circuit court considered, matters outside the pleadings, and the parties agree on appeal that the motion was treated by the circuit court as a motion for summary judgment. *See* WIS. STAT. § 802.06(2)(b) (2019-20); *CTI of Ne. Wis., LLC v. Herrell*, 2003 WI App 19, ¶6, 259 Wis. 2d 756, 656 N.W.2d 794 (If matters beyond the pleadings are submitted on a motion to dismiss and "the court does not exclude the supplemental matters, it shall treat the motion to dismiss as a summary judgment motion.").

(continued)

¶4      American West is a California corporation engaged in the trucking and warehousing business, and Josh Brown is its CEO. Horizon and MDS are Wisconsin companies, and Thomas J. Alfuth is the president of both and also the owner of Horizon. At the time the agreements at issue were executed, MDS operated a trucking business that serviced customers using trucks and warehouses leased from Horizon.

¶5      After months of negotiation, Brown and Alfuth reached an agreement in December 2017 for the sale of MDS's assets to American West. The parties continued to negotiate throughout January 2018, and those negotiations resulted in two lease agreements between Horizon and American West. The individuals involved in the negotiations were Brown, Alfuth, and Danny Ray Hunt, who was then a consultant to MDS.

¶6      On February 1, 2018, Alfuth met with Brown at the Horizon facility in Jefferson, Wisconsin, to execute three agreements: an Agreement for Purchase and Sale of Assets (Asset Sale Agreement or Agreement), a Truck Lease Agreement (or Truck Lease), and a Building Lease Agreement. This action concerns the Asset Sale Agreement and the Truck Lease Agreement.

¶7      The Asset Sale Agreement identifies MDS as the "seller" and American West as the "buyer" and provides for the sale of assets by MDS to American West. The Agreement provides for American West to pay MDS royalties on a monthly basis for five years as "consideration for the Purchased Assets." The "Purchased Assets" are defined as (a) MDS's customer relationships

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

and accounts, along with information about the customers; and (b) certain equipment belonging to MDS. The Asset Sale Agreement contains a choice of law and forum selection clause providing that any proceedings relating to the Asset Sale Agreement shall be brought in California state courts and governed by California law. The Asset Sale Agreement does not reference leases of trucks or buildings.

¶8      The Truck Lease Agreement identifies Horizon as the "Lessor" and American West as the "Lessee." It provides for American West to make monthly rental payments to Horizon for two years to lease fifteen trucks. The Truck Lease Agreement does not reference the Asset Sale Agreement or the sale of MDS's business to American West. The Truck Lease Agreement contains a choice of law clause providing that Wisconsin law shall govern the interpretation of the Truck Lease Agreement. It does not contain a forum selection clause.

¶9      In March 2020, Horizon and MDS brought this action alleging that American West failed to pay royalties to MDS as provided in the Asset Sale Agreement and failed to pay rent to Horizon as provided in the Truck Lease Agreement even as American West continued to use the trucks. The plaintiffs asserted one breach of contract claim based on American West's alleged failure to pay royalties and both a breach of contract claim and an unjust enrichment claim based on American West's allegedly uncompensated use of Horizon's trucks.

¶10     Shortly thereafter, American West moved to dismiss this action based on the forum selection clause in the Asset Sale Agreement, arguing that the action was required to be filed in California. American West filed an affidavit by Hunt, who at that time was president of American West, in support of its motion, and the plaintiffs filed an affidavit by Alfuth in opposition to the motion.

¶11    The circuit court issued an oral ruling granting American West's motion to dismiss based on the parties' filings.

¶12    MDS and Horizon appeal.

¶13    We provide additional undisputed background as pertinent throughout the discussion that follows.

## DISCUSSION

¶14    We first explain the standard governing our review of this case. We next interpret and apply the language in the Asset Sale Agreement. We conclude that the forum selection clause in the Asset Sale Agreement does not entitle American West to summary judgment dismissing the claims based on American West's alleged nonpayment of rent to Horizon for the use of Horizon's trucks because those claims do not arise under or relate to the Asset Sale Agreement. We further conclude that the forum selection clause in the Asset Sale Agreement does entitle American West to summary judgment dismissing the breach of contract claim based on American West's alleged nonpayment of royalties to MDS because that claim does arise under or relate to the Asset Sale Agreement. After each conclusion, we address the parties' arguments to the contrary and explain why they lack merit.

### I.  Standard of Review

¶15    We review an order granting summary judgment de novo. *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. A party is entitled to summary judgment if there is no genuine issue of material

fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) [2]

¶16 "Interpretation of a contract is a question of law which this court reviews de novo." *Beilfuss v. Huffy Corp.*, 2004 WI App 118, ¶6, 274 Wis. 2d 500, 685 N.W.2d 373. Whether forum selection and choice of law clauses in an agreement are valid is also a question of law that we review de novo. *See id.* (interpretation of contract is question of law subject to de novo review); *Drinkwater v. American Fam. Mut. Ins. Co.*, 2006 WI 56, ¶14, 290 Wis. 2d 642, 714 N.W.2d 568 (choice-of-law determination question of law subject to independent review).

¶17 When interpreting a written agreement, "our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.'" *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (quoted source omitted). "[T]he best indication of the parties' intent is the language of the contract itself." *Id.* We presume the parties' intentions are expressed in the language of the contract, *Estate of Kriefall v. Sizzler USA Franchise, Inc*, 2012 WI 70, ¶21, 342 Wis. 2d 29, 816 N.W.2d 853, for that is the language the parties "saw fit to use," *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359. "Contract language is construed according to its plain or ordinary meaning." *Tufail v. Midwest Hospitality, LLC*, 2013 WI 62, ¶28, 348 Wis. 2d 631, 833 N.W.2d 586. If a contract provision is unambiguous, we construe it according to its literal terms. *Id.*, ¶26.

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## II. Interpretation and Application of Asset Sale Agreement

¶18 The following provisions provide context for the analysis that follows.

*Preamble*

¶19 The Agreement begins by stating in the first paragraph ("preamble"):

> THIS AGREEMENT FOR PURCHASE AND SALE OF ASSETS is made and entered into on 12-27-17 ("Effective Date") by and among AMERICAN WEST WORLDWIDE EXPRESS, INC., a California corporation (Buyer) and MDS ENTERPRISES, INC., a Wisconsin corporation (Seller) collectively referred to herein as the "Parties" and each are referred to as a "Party".

¶20 The Agreement defines "buyer," "seller," and "parties" as those as having the meaning set forth in the preamble.

*"Contemplated Transactions"*

¶21 Immediately following the preamble is a paragraph titled "Background," which states:

> Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, certain of Seller's assets related to (i) Seller's business of truckload and less-than-truckload transportation services related to LTL freight forwarding, (ii) Seller's business of warehousing freight at its facilities located at 761N. Parkway, Jefferson, Wisconsin. All of the terms hereafter provided (collectively, the "Contemplated Transactions")[.]

¶22 "Contemplated Transactions" are defined as having "the meaning set forth in the Background." As set forth in the "Background" quoted above, the transactions contemplated by the Asset Sale Agreement are the selling and buying of certain assets related to MDS's trucking and warehousing business.

7

*"Purchased Assets"*

¶23    "Purchased Assets" are defined as having "the meaning set forth in Section 2.1," which describes the purchased assets as "(a) Seller's customer relationships and accounts that make up the Purchased Business; and (b) Certain equipment presently used by Seller to service the Purchased Business and listed in Exhibit A hereto (the "Purchased Equipment")."  The equipment listed in Exhibit A is: "Forklift $3,000.00[,] Computer Server $2,500.00[,] All other Office Equipment, Furniture and Fixtures $7,500.00."[3]

*Consideration*

¶24    The Agreement states "As consideration for the Purchased Assets, Buyer will pay to Seller the sum of the following:  (i) three percent (3%) from the agreed business during the sixty (60) month (5-year) period following Closing, which amount shall be paid to Seller on a monthly basis based on the gross revenue for the preceding month."

¶25    American West also agrees to "pay Seller $20,000.00 upon execution of this agreement" as "binding consideration for this agreement as well as a deposit on the purchase of trailers by Buyer from Horizon Rentals, LLC."

*Covenant Not to Compete*

¶26    The document contains a covenant not to compete in which Alfuth and MDS agree not to "engage in or own, manage, operate, or control an entity

---

[3] A Bill of Sale for the "Purchased Equipment" is attached to the Agreement as Exhibit B.

engaged in, any business that is competitive with the Purchased Business in the states of California" for a period of five years after the date of closing.

*Signed Execution*

¶27    The last page of the Agreement contains only one sentence:  "IN WITNESS WHEREOF, each of the Parties has executed or caused this Agreement for Sale and Purchase of Assets to be executed on its behalf by a duly authorized officer all as of the Effective Date," and two signatures:  Alfuth's signature for MDS and Brown's for American West.

### A.  The Asset Sale Agreement is the final and complete expression of the parties' agreement.

¶28    A contract that unambiguously represents the final and complete expression of the parties' agreement is considered fully "integrated," and the court construing the contract may not consider evidence of any prior or contemporaneous oral or written agreement between the parties.  ***Town Bank***, 330 Wis. 2d 340, ¶39.

¶29    Section 10.8, "Entire Agreement," of the Asset Sale Agreement states:

> This Agreement is intended by the Parties as a final expression of their agreement and as a complete and exclusive statement of the terms of their agreement with respect to its subject matter.  This Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, oral or written, and this Agreement may not be explained or supplemented by evidence of consistent additional terms.  No previous course of dealing will be admissible to explain, modify or contradict the terms of this Agreement.  This Agreement supersedes, merges, and voids all prior representations, statements, negotiations, understandings, proposed agreements, and other agreements, written or oral, relating to its subject matter.

Neither party challenges this integration clause as ambiguous. We conclude that the preceding provision is an unambiguous integration clause reflecting the parties' intent for the Asset Sale Agreement to supersede any other oral or written agreements.

### B. A party must bring a suit arising under or relating to the Asset Sale Agreement in California.

¶30    The Asset Sale Agreement contains a choice of law and forum selection clause that states:

> It is understood and agreed that the construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws [of the] State of California without regard to its rules of conflicts or choice of laws. Any suit, action or proceeding by any Party that arises under or in any way relates to this Agreement or the transactions contemplated hereby may be brought only in the state courts of the State of California and shall be tried only by a court and not by a jury. Each Party hereby consents to the jurisdiction of such courts to decide any and all such suits, actions and proceedings and to such venue, and they hereby expressly waive any right to a trial by jury in any and all such suits, actions and proceedings.

We interpret this three-sentence provision one sentence at a time.

¶31    The first sentence is an unambiguous choice of law clause selecting California law to govern interpretation of the Asset Sale Agreement. The phrase "shall at all times and all respects" makes clear the parties' intent to designate California law as the exclusive law governing the Asset Sale Agreement. Just as we read "shall" to impose a mandatory duty when it occurs in a statute, *see Karow v. Milwaukee Cnty. Civ. Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978) ("the word 'shall' is presumed mandatory when it appears in a statute"), we construe the word "shall" here to read the choice of law clause as mandatory.

10

¶32    The second sentence is an unambiguous, mandatory forum selection clause that, based on the ordinary meaning of its language, requires the parties to bring any claim arising under or relating to the Asset Sale Agreement in the state courts of the State of California.  *See **Tufail***, 348 Wis. 2d 631, ¶28 ("Contract language is construed according to its plain or ordinary meaning.").  The language of the clause providing that "*any* suit…may be brought *only* in the state courts of the State of California" unequivocally mandates exclusive jurisdiction to the California courts because "only" modifies "may."  *See **Converting/Biophile Labs, Inc., v. Ludlow Composites Corp.***, 2006 WI App 187, ¶29, 296 Wis. 2d 273, 722 N.W.2d 633 (forum selection clauses containing language such as "exclusive" or "only" mandate that "the designated courts are the only ones which have jurisdiction.").

¶33    The third sentence underscores the parties' consent to the choice of law, forum selection, and jury waiver clauses.

¶34    In sum, this provision unambiguously requires that a party bring any suit arising under or relating to the Asset Sale Agreement in California state courts.

**C.  The truck rental claims are not subject to the forum selection clause because they do not arise under or relate to the Asset Sales Agreement.**

¶35    The plaintiffs argue that the forum selection clause in the Asset Sale Agreement does not entitle American West to summary judgment dismissing the truck rental claims.  As we explain, we agree.

¶36    We briefly reiterate background pertinent to the claims related to American West's use of Horizon's trucks.  The Truck Lease Agreement, executed on February 1, 2018, provides that American West will lease fifteen trucks from

11

Horizon for twenty-four months and pay a monthly rent of $20,500. It contains a choice of law provision stating: "The laws of the state of Wisconsin will govern the interpretation of this instrument and the rights and obligations of all parties hereto." The Truck Lease Agreement contains no forum selection clause and does not reference the Asset Sale Agreement; nor does the Asset Sale Agreement reference the Truck Lease Agreement. The complaint alleges that American West did not deliver to Horizon the agreed-upon rental payments even as American West continued to use Horizon's trucks. Based on these allegations, the complaint asserts breach of contract and unjust enrichment claims against American West.

¶37 We now explain why we conclude that the forum selection clause in the Asset Sale Agreement does not bar these claims from being brought in Wisconsin.

¶38 The forum selection clause in the Asset Sale Agreement, by its own language, applies to "[a]ny suit, action or proceeding by any Party that arises under or in any way relates to" the Asset Sale Agreement or any of its "transactions contemplated hereby." As explained above, the "transactions contemplated" are defined in the background section of the Agreement as the selling and buying of certain assets related to the MDS's trucking business. The claims regarding American West's failure to pay rent for the use of Horizon's trucks on their face do not arise under or relate to the buying and selling of MDS's business assets.

¶39 More specifically, the claims relating to truck rental payments do not depend on any section of or language in the Asset Sale Agreement and are not associated with the buying and selling of any items referenced in the Asset Sale Agreement. The Asset Sale Agreement does not refer to the Truck Lease

Agreement as a "contemplated transaction," nor does it refer anywhere else in the document to any kind of contemplated lease or rental agreement or to Horizon's trucks.[4]

¶40     Because the Asset Sale Agreement is a fully integrated contract that memorializes "a final expression of [the parties'] agreement and [] a complete and exclusive statement of the terms of their agreement with respect to its subject matter," because the Asset Sale Agreement makes no mention of a contemplated truck lease or of any transaction involving trucks, because the Truck Lease Agreement does not reference the Asset Sale Agreement, and because the claims concerning the rental payments depend upon the Truck Lease Agreement not the Asset Sale Agreement, these claims do not "arise under" or "relate to" the Asset Sale Agreement or its contemplated transactions.  Therefore, these claims are not subject to the forum selection clause in the Asset Sale Agreement.

¶41     In sum, the forum selection clause in American West's Asset Sale Agreement with MDS does not entitle American West to summary judgment dismissing the claims concerning its alleged failure to make truck rental payments pursuant to its Truck Lease Agreement with Horizon.

¶42     We now address American West's three arguments to the contrary. First, American West argues that the Truck Lease Agreement and the Building Lease Agreement are "contemplated transactions" under the Asset Sale Agreement.  It points to an affidavit from Hunt in which he states that American

---

[4] It is undisputed that the purchase of "trailers" from Horizon that is mentioned in Section 3.3 of the Asset Sale Agreement does not refer to the trucks that belong to Horizon and are the subject of the Truck Lease Agreement.

West would not have agreed to close on the Asset Sale Agreement in the absence of the Truck Lease Agreement and the Building Lease Agreement, that the Truck Lease is a transaction "contemplated by" the Asset Sale Agreement, and that all three contracts represent a "consolidated transaction."

¶43 Hunt's averments do not create a genuine dispute of fact as to the application of the forum selection clause to the truck rental claims. As to Hunt's averment about American West's unwillingness to agree to the asset sale without the Truck Lease, the Asset Sale Agreement itself shows unambiguously that American West *did* agree to the Asset Sale Agreement in the absence of, and without reference to, lease agreements. The Asset Sale Agreement is a fully integrated contract that supersedes any verbal or written understanding the parties may have had that they would negotiate for lease agreements after agreeing on terms for the Asset Sale Agreement. *See Town Bank*, 330 Wis. 2d 340, ¶39. If the Truck Lease were a necessary component of the Asset Sale Agreement, we would expect to see some language in the Agreement so indicating. *See Journal/Sentinel, Inc.*, 155 Wis. 2d 704 at 711 (language parties "saw fit to use" is best expression of parties' intentions). Similarly, if the Asset Sale Agreement were contingent upon the later execution of lease agreements, we would expect that contingency to be expressly stated in the Agreement.

¶44 As to Hunt's averment about the lease being a contemplated transaction, "contemplated transactions," as we have explained, are defined in the Agreement by language describing the buying and selling of MDS's business assets without any mention of the leasing of trucks from Horizon. That the parties may well have been considering the Truck Lease at the same time as they were finalizing the Asset Sale Agreement does not mean that the forum selection clause

in the Agreement extends to the separate Truck Lease covering separate transactions from those covered in the Agreement.

¶45    Hunt's averment regarding a "consolidated transaction" is a conclusory assertion that does not trump the plain language of the Agreement, which shows no connection at all between the Asset Sale Agreement and the Truck Lease Agreement.  *See Town Bank*, 330 Wis. 2d 340, ¶37 ("If the contract is integrated, absent the existence of fraud, duress, or mutual mistake, the court construing the contract may not consider evidence of any prior or contemporaneous oral or written agreement between the parties.").

¶46    Second, American West argues that the truck rental claims "relate to" the Asset Sale Agreement because the trucks were necessary for operating the trucking business, serving customer accounts purchased under the Asset Sale Agreement, and pulling trailers referenced in the Asset Sale Agreement.  This argument fails because, although it is reasonable to assume that American West would need trucks to make use of the customer accounts it purchased from MDS, nothing in the Asset Sale Agreement specifies whether American West would use its own trucks, purchase or lease trucks from another entity, or do something else.  Whether plaintiffs will prevail on the breach of contract and unjust enrichment claims relating to American West's use of Horizon's trucks does not depend on any provision of the Asset Sale Agreement and therefore does not "arise under" or "relate to" that Agreement.  We will not disturb the plaintiffs' "important legal right" to choose their own forum, *Littmann v. Littmann*, 57 Wis. 2d 238, 250, 203 N.W.2d 901(1973), which is entitled "great weight," *Converting/Biophile*, 296 Wis. 2d 273, ¶21, based on an asserted connection between the Asset Sale Agreement and the Truck Lease Agreement that is not reflected in the language of the agreements.

¶47     Third, American West relies on the provision in the Agreement that states that, in addition paying royalties, "Buyer will pay Seller $20,000.00 upon execution of this agreement.    This payment will be considered binding consideration for this agreement as well as a deposit on the purchase of trailers by Buyer from Horizon Rentals, LLC."    American West cites this provision for the premise that Horizon "received all of the proceeds" of the Asset Sale Agreement and must therefore bear the burdens of the Agreement.    *See Conway v. Marachowsky*, 262 Wis. 540, 542, 55 N.W.2d 909 (1952) (stating that if a party "accepts the benefits of a contract it must bear its burdens").    This argument fails because it ignores the undisputed fact that the claims relate to the rental of trucks, not the purchase of trailers.[5]    The forum selection clause in the Agreement does not purport to govern "all disputes between any of the parties" but rather only those disputes that "arise under" or "relate to" the Agreement.    It cannot govern the choice of forum for claims arising under the Truck Lease, an entirely separate agreement, simply because American West is a party to both agreements.[6]

---

[5] The plaintiffs dispute whether American West actually paid $20,000 to Horizon for the purchase of trailers.  However, any factual dispute as to this payment is immaterial because the claims that American West used Horizon's trucks without paying rent to Horizon do not arise under or relate to the Asset Sale Agreement.

[6] In another iteration of this argument, American West argues that Horizon must be bound by the Asset Sale Agreement because "Horizon was listed as a seller on the Bill of Sale" for the "purchased equipment" comprising a forklift and office equipment as detailed at ¶23 of this opinion.  Setting aside the fact that, as the plaintiffs point out, "the bill of sale does not reference any assets sold by Horizon, and it was not signed by anyone other than [American West]," this argument fails because, as explained, the truck rental claims do not relate to the Agreement.  Whether Horizon is bound by the Agreement in other ways is immaterial to the question at issue here.

¶48 In sum, American West fails to point to any evidence showing a genuine dispute of material fact as to whether the forum selection clause prohibits the truck rental claims from being brought in Wisconsin.

### D. The royalty payments claims are subject to the forum selection clause because they arise under the Asset Sales Agreement.

¶49 The plaintiffs argue that the forum selection clause in the Asset Sale Agreement does not entitle American West to summary judgment dismissing the claims related to American West's alleged failure to pay MDS certain royalties. As we explain, we disagree.

¶50 As stated, the Asset Sale Agreement requires that American West pay MDS royalties, on a monthly basis, for five years. The complaint alleges that American West failed to make those payments.

¶51 We construe the unambiguous forum selection clause "according to its literal terms." *Tufail*, 348 Wis. 2d 631, ¶26. As explained above, the forum selection clause requires that "[a]ny suit, action or proceeding by any Party that arises under or in any way relates to" the Asset Sale Agreement "be brought only in the state courts of the State of California." Because the claim for breach of contract depends entirely upon the royalties provision in the Asset Sale Agreement, on its face it arises under the Asset Sale Agreement and, therefore, "may be brought only in the state courts of the State of California," not in Wisconsin.

¶52 In sum, American West is entitled to summary judgment dismissing the royalty payments claim based on the forum selection clause in the Asset Sale Agreement.

¶53    We now explain why we reject the plaintiffs' two arguments to the contrary.

¶54    First, the plaintiffs argue that "the language pertaining to the selection of forum is permissive or, at best, ambiguous." They point to the drafter's use of the word "may" as "permissive language" and analogize to an Ohio forum selection clause that was determined in *Converting/Biophile*, 296 Wis. 2d 273, ¶38, not to preclude Wisconsin jurisdiction.

¶55    This argument based on "may" fails because "may" is modified by the word "only," as in "may be brought only in the state courts of the State of California." *See id.*, ¶29 (forum selection clauses containing language such as "exclusive" or "only" mandate that "the designated courts are the only ones which have jurisdiction."); *see also,* Marjorie A. Shields, Annotation, *Permissive or Mandatory Nature of Forum Selection Clauses Under State Law*, 32 A.L.R.6th 419 (2008) ("Generally, mandatory forum selection clauses have contained words such as 'exclusive' or 'sole' or 'only' which indicate that the contracting parties intended to make jurisdiction exclusive."). The word "only" in the forum selection clause at issue here serves to eliminate any ambiguity as to whether the clause is permissive or mandatory.

¶56    In addition, the plaintiffs' reliance on *Converting/Biophile* is inapposite because the forum selection clause at issue there is not analogous to the one at issue here. The forum selection clause at issue in that case did not contain words such as "only" or "exclusive." *Converting/Biophile*, 296 Wis. 2d 273, ¶34. Rather, it provided: "Buyer hereby consents to and submits to the jurisdiction of the courts of the State of Ohio." *Id.* The language at issue in *Converting/Biophile* did not confer mandatory Ohio jurisdiction precisely "due to its permissive and

ambiguous phrasing." *Id.*, ¶38. Here, the phrasing is not permissive or ambiguous, and therefore the analogy to *Converting/Biophile* fails.

¶57 Second, plaintiffs argue that the forum selection clause is unenforceable because: (1) enforcing the choice of law clause would violate important Wisconsin public policies; and (2) the forum selection clause is unconscionable and unreasonable. We first set out the general law governing enforceability of choice of law and forum selection provisions and then address the plaintiffs' arguments regarding enforceability.

¶58 Both choice of law and forum selection clauses are generally permitted under Wisconsin law, but courts will decline to enforce such clauses in limited circumstances. *American Fam. Mut. Ins. Co. v. Cintas Corp. No. 2*, 2018 WI 81, ¶13, 383 Wis. 2d 63, 914 N.W.2d 76  (choice of law clauses); *Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶1, 275 Wis. 2d 444, 685 N.W.2d 884 (forum selection clauses). When an instrument contains both a choice of law provision and a forum selection provision, a court first examines whether the choice of law provision is enforceable and, if it is, the court next determines whether the forum selection provision is enforceable. *Beilfuss*, 274 Wis. 2d 500, ¶¶9, 13. If the choice of law provision in an instrument is unenforceable, it is unreasonable to enforce the choice of forum provision in that same instrument. *Beilfuss*, 274 Wis. 2d 500, ¶16 ("[B]ecause the choice of law provision is invalid, the enforcement of the forum selection provision would be unreasonable.").

¶59 A "caveat" to the general enforceability of choice of law clauses is that parties "may not use their freedom to escape 'important public policies of a state whose law would be applicable if the parties['] choice of law provision were disregarded.'" *American Fam.*, 383 Wis. 2d 63, ¶13 (quoting *Bush v. National*

*Sch. Studios, Inc.*, 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987)). "[T]his state's important public policy considerations would trump a choice of law provision selecting a foreign jurisdiction's law as controlling." *Beilfuss*, 274 Wis. 2d 500, ¶13 (citing *Bush*, 139 Wis. 2d at 642).

¶60 Wisconsin courts keep the category of "important" public policies "narrowly focused" to its "essential kernel," so as to promote "certainty and predictability in contractual relations" and so as not to "leave parties perennially wondering whether we will honor their choice-of-law decisions." *American Fam.*, 383 Wis. 2d 63, ¶16. Although there is no bright-line rule for what constitutes an important public policy:

> statutes or common law which make a particular type of contract enforceable, e.g., usury laws, or which make a particular contract provision unenforceable, e.g., laws prohibiting covenants not to compete, or that are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party, are likely to embody an important state public policy.

*Bush*, 139 Wis. 2d at 643.

¶61 If a choice of law provision in a contract does not violate important public policies, the court next examines the contract's forum selection provision. *Beilfuss*, 274 Wis. 2d 500, ¶13. Because "[o]ur common law obligates parties to a contract to perform their duties under the contract," forum selection clauses are presumptively valid. *Converting/Biophile*, 296 Wis. 2d 273, ¶22. However, a court will refuse to enforce a forum selection clause that is "unreasonable under the circumstances," for example because the forum chosen is "seriously inconvenient," *Beilfuss*, 274 Wis. 2d 500, ¶17, or if it is unconscionable or violates public policy. *Converting/Biophile*, 296 Wis. 2d 273, ¶22.

¶62    "Generally, unconscionability means the absence of a meaningful choice on the part of one party, together with contract terms that are unreasonably favorable to the other party." *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 89, 483 N.W.2d 585 (Ct. App. 1992).  "A court will refuse to enforce" a forum-selection clause as unconscionable "only if there is a quantum of procedural unconscionability plus a quantum of substantive unconscionability." *Pietroske*, 275 Wis. 2d 444, ¶1.  "Procedural unconscionability relates to factors bearing on the meeting of the minds of the contracting parties; substantive unconscionability pertains to the reasonableness of the contract terms themselves." *Id.*, ¶6.

¶63    Bearing these legal principles in mind, we now consider the plaintiffs' arguments that the forum selection clause here is unenforceable.

¶64    Plaintiffs argue that enforcing the choice of law clause would violate Wisconsin's important public policy governing covenants not to compete because the Asset Sale Agreement contains a covenant not to compete.  That provision states that the Sellers:

> agree that for the entire period during the purchase agreement, and a period of five (5) years beginning as of the date of Closing, they will not, either for themselves or with one or more third parties, engage in or own, manage, operate, or control an entity engaged in, any business that is competitive with the Purchased Business in the states of California, (the "Non-Competition Agreement").  Sellers also agree to not solicit any customer or employee of Buyer for the same period of time.

The plaintiffs argue that we should refuse to enforce the Asset Sale Agreement because it contains a "broad" covenant not to compete that "restricts [Alfuth's] ability to conduct the type of business he knows and earn a living."  They analogize to *Beilfuss*, 274 Wis. 2d 500, ¶¶14-16 to argue that, because the

21

Agreement contains a covenant not to compete, it "implicates strong public policies of Wisconsin." This argument fails for at least the following reasons.

¶65    First, as the plaintiffs acknowledge, the covenant not to compete in the Agreement is "incidental to the sale of a business" and is therefore not subject to the same "exacting scrutiny" as a covenant not to compete in an employment contract. *Reiman Assocs., Inc. v. R/A Advert., Inc.*, 102 Wis. 2d 305, 309, 306 N.W.2d 292 (Ct. App. 1981). Second, the plaintiffs do not argue that this particular covenant not to compete violates any specific Wisconsin statute or case law. This is in contrast to *Beilfuss*, 274 Wis. 2d 500, where we determined that a covenant not to compete in an employment agreement violated WIS. STAT. § 103.465, which governs restrictive covenants in employment contracts. *Beilfuss*, 274 Wis. 2d 500, ¶15. Third, the underlying litigation in this case does not concern the Agreement's covenant not to compete, in contrast to *Beilfuss*, where a former employer sought to enforce a covenant not to compete against the former employee. *Id.*, ¶¶1-3. Thus, enforcing the choice of law clause in this case would not come at the expense of Wisconsin's policy regarding covenants not to compete because we are not called upon to enforce the agreement not to compete.

¶66    The plaintiffs argue that, regardless of the enforceability of the choice of law clause, the forum selection clause is unenforceable on the grounds that: (1) the clause is procedurally unconscionable because it was negotiated by Hunt, who subsequently went to work for American West, and because the parties' bargaining power was unequal; and (2) the clause is substantively unconscionable and unreasonable under the circumstances because California is an "inconvenient, commercially unreasonable venue." We address these grounds in turn.

¶67 We reject the plaintiffs' argument regarding procedural unconscionability because the record shows that MDS did not face "the absence of a meaningful choice." *Leasefirst*, 168 Wis. 2d at 89. Alfuth averred that he, as well as Hunt, participated in the contract negotiations. Although the plaintiffs argue in their reply brief that Hunt's "prominent" and "troubling" role in negotiating the Asset Sale Agreement raises "significant questions as to who negotiated what for whom," the plaintiffs point to no evidence that Hunt engaged in improprieties when representing MDS and before joining American West. Without more, plaintiffs fail to explain how it is "troubling" that a consultant to a trucking business would, after that business was sold, go to work for the new owner. The plaintiffs' argument that they had unequal bargaining power is contrary to the evidence that the parties were experienced business entities who clearly contracted for the forum selection clause of the Asset Sale Agreement.

¶68 We also reject the plaintiffs' argument that the Asset Sale Agreement is substantively unconscionable. It is reasonable that American West would "select its headquarters' [location] as the forum of choice," *Pietroske*, 275 Wis. 2d 444, ¶7, and the plaintiffs point to no evidence that the contract terms are "unreasonably favorable" to American West. *Leasefirst*, 168 Wis. 2d at 89.

¶69 In sum, the plaintiffs fail to point to evidence showing a genuine dispute of fact as to whether the forum selection clause requires that the royalties claim be brought in California.

**CONCLUSION**

¶70 For the reasons stated, we conclude that the forum selection clause in the Asset Sale Agreement does not entitle American West to summary judgment dismissing the claims for breach of contract and unjust enrichment for

23

failure to make rental payments under the Truck Lease Agreement but that it does entitle American West to summary judgment dismissing the claim for breach of contract for failure to make royalty payments under the Asset Sale Agreement. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.